James C. Shah (SBN 260435)
**SHEPHERD, FINKELMAN, MILLER**
**& SHAH, LLP**
35 E State Street
Media, PA 19063
Phone: (610) 891-9880
Fax: (866) 300-7367
jshah@sfmslaw.com

*Attorneys for Defendants*
*Careful Shopper, LLC*
*Adam Starke and Sora Starke*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TP-LINK CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>CAREFUL SHOPPER, LLC, ADAM J. STARKE and SORA STARKE,<br><br>Defendants. | Case No.: 8:19-CV-00082-JLS-KES<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER OR STAY THIS ACTION**<br><br>Hearing: Friday, May 17, 2019<br>Time: 10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Courtroom: 10A<br><br>Complaint Filed: January 15, 2019 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Friday, May 17, 2019 at 10:30 a.m. in a courtroom 10A , Defendants Careful Shopper LLC, Adam J. Starke and Sora Starke ("Defendants") will and hereby do move the Court for dismissal, transfer, or stay of this action under the first-to-file rule or, alternatively, Rule 13(a) of the Federal Rules of Civil Procedure.

This motion is brought on the grounds, first, that a prior action involving substantially similar issues and parties was previously filed first in the United States District Court for the Eastern District of New York ("New York Action"). No good cause exists for refusing to follow the first-to-file rule, and, as a result, this action should be dismissed, transferred or stayed. Second, the claims raised in the Complaint should have been or should be pled as compulsory counterclaims in the New York Action. Rule 13(a) bars the assertion of claims in a new action that arose out of the transactions or occurrences that are the subject matter of the opposing party's earlier-filed claim.

This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities and exhibits; the Affidavit of Adam J. Starke; the Declaration of Mark Schlachet; and upon such other matters as may be presented to the Court at the time of the hearing.

This motion is made following a good faith effort to meet and confer with Plaintiff's counsel. On March 25, 2018, and pursuant to this Court's Standing Order, ¶8.b. and Local Rule 7-3, Defendants' counsel emailed Plaintiff's counsel outlining the grounds for Defendants' instant motion to dismiss. Plaintiff responded in detail on March 29, 2019, to which Defendants responded at length. Finally, Plaintiff responded later on March 29, stating "[w]e believe both parties have fully articulated their positions through these meet and confer

1  communications," with which observation Defendants agree.

2

3  Dated: April 3, 2019                    SHEPHERD, FINKELMAN, MILLER
                                           & SHAH LLP
4

5                                          By: /s/ James C. Shah
                                           James C. Shah (SBN 260435)
6                                          35 E State Street
7                                          Media, PA 19063
                                           Phone: (610) 891-9880
8                                          Fax: (866) 300-7367
9                                          jshah@sfmslaw.com

10
                                           *Attorneys for Defendant Careful Shopper,*
11                                         *LLC, Adam J. Starke and Sora Starke*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I. **FACTUAL BACKGROUND** ............................................................................ 1

   A.  Events Just Prior to TP-Link's Filing of the Instant Complaint ...................... 3

   B.  The Factual Basis of TP-Link's Instant Complaint, Count I-VII ..................... 4

   C.  The Factual Basis of the Instant Complaint is Identical to the
       Factual Basis of TP-Link's Defenses in the New York Action ......................... 5

   D.  TP-Link's Claims Here and Its Defense in the New York
       Action Must Overcome Contrary New York Law and
       Second Circuit Precedent ................................................................ 6

II. **ARGUMENT** .............................................................................................. 7

    A. This Case Should be Dismissed or, in the Alternative,
       Transferred or Stayed Under the First-to-File Rule ................................. 7
         1.  Applicable Test ......................................................................... 8
         2.  Application of the Applicable Test ............................................ 8

    B. This Case Should be Dismissed or, in the Alternative,
       Transferred or Stayed Under Rule 13(a) of the Federal Rules
       of Civil Procedure .................................................................... 10
         1.  Applicable Test ..................................................................... 10
         2.  Application of the Applicable Test ........................................ 11
         3.  TP-Link's Claims All Arose Prior to
            Commencement of this Action ............................................... 11
         4.  Forum Shopping is Contrary to Good Policy and Should
            Weigh Heavily .................................................................. 12

III. **CONCLUSION** ....................................................................................... 13

# TABLE OF AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***Cases***

*Adoma v. Univ. of Phoenix, Inc.,*
711 F. Supp. 2d 1142 (E.D. Cal.) ......................................................... 8, 9

*Alltrade, Inc. v. Uniweld Prods.,*
946 F.2d 622 (9th Cir. 1991) ................................................................ 13

*AT & T Corp. v. American Cash Card Corp.,*
184 F.R.D. 515 (1999) .......................................................................... 10

*Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.,*
2009 U.S. Dist. LEXIS 79738, 2009 WL 2431993 ............................. 10

*Baker v. Gold Seal Liquors,*
417 U.S. 467 (1974).............................................................................. 10

*Barnes & Noble, Inc. v. LSI Corp.,*
823 F. Supp. 2d 980 (N.D. Cal. 2011) .................................................. 8

*Bell Canto Design, Ltd. v. MSS Hifi, Inc.,*
837 F. Supp. 2d 208 (S.D.N.Y. 2011) ............................................5, 6, 7

*Careful Shopper, LLC v. TP-Link USA Corp.,*
No. 1:18-cv-03019-RJD-RML (E.D.N.Y. 2018)................................... 1

*Cedars-Sinai Med. Ctr. v. Shalala,*
125 F.3d 765 (9th Cir. 1997) ................................................................ 8

*Critical-Vac Filtration Corp. v. Minuteman Intern. Inc.,*
233 F.3d 697 (2000)............................................................................... 10

*Dewan v. M-I, L.L.C.,*
2015 WL 3797462 (E.D. Cal. 2015) ..................................................... 8

*Genentech v. Eli Lilly and Co.,*
998 F.2d 931 (Fed. Cir. 1993). ............................................................. 10

*In re Lazar,*
237 F.3d 967 (9th Cir. 2001) ................................................................ 11

*In re Pinkstaff,*
974 F.2d 113 (9th Cir. 1992) ..........................................................10, 11

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.,*
544 F. Supp. 2d 949 (N.D. Cal. 2008)................................................... 9

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.,*
787 F.3d 1237 (9th Cir. 2015) .............................................................. 9

*Leider v. Ralfe,*
387 F.Supp.2d 283 (S.D.N.Y. 2005) ................................................... 7

Defendants' Notice of Motion & Motion to Dismiss or the Alternative, Transfer or Stay this Action
8:19-cv-00082-JLS-KES

*Location Servs., LLC v. Digital Recognition Network, Inc.,*
  2018 U.S. Dist. LEXIS 138373 (E.D. CA 2018)......................................1

*MGA Entm't, Inc. v. Mattel, Inc.,*
  2012 U.S. Dist. LEXIS 22055.................................................11, 12

*Mitchell v. CB Richard Ellis Long Term Disability Plan,*
  611 F.3d 1192 (9th Cir. 2010) .................................................10

*Mophie, Inc. v. ABM Wireless, Inc.,*
  2015 U.S. Dist. LEXIS 189512 ................................................11

*Nationstar Mortg., LLC v. Truman Capital Advisors,*
  2013 U.S. Dist. LEXIS 202188 ........................................10, 12, 13

*NBC Studios, LLC v. Dish Network Corp.,*
  2012 U.S. Dist. LEXIS 186946 ...............................................13

*Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.,*
  816 F.2d 68 (2d Cir. 1987) ....................................................5, 6

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
  678 F.2d 93 (9th Cir. 1982) ......................................................8

*SDMS, Inc. v. Rocky Mountain Chocolate Factory, Inc.,*
  No. 08 CV 0833 JM (AJB), 2008 U.S. Dist. LEXIS 90276..................10

*Technomarine SA v. Jacob Time, Inc.,*
  2012 U.S. Dist. LEXIS 90261 (S.D.N.Y. June 22, 2012) .......................7

*United States v. Corinthian Colleges,*
  655 F.3d 984 (9th Cir. 2011) ...................................................1

**Statutes**
CPLR §302 (a)(1) .................................................................3
NYGBL §369-b .....................................................................2

**Other Authorities**
Black's Law Dictionary 726 (9th ed. 2009)....................................13
6 Wright and Miller §1418 .....................................................10

**Rules**
Fed. R. Civ. P. 11 ..............................................................13
Fed. R. Civ. P. 12(b)(6) ........................................................10
Fed. R. Civ. P. 13(a) ....................................................10, 11, 12, 13
Fed. R. Evid. 201(b)(2).........................................................1

# I. FACTUAL BACKGROUND

Plaintiff, TP-Link USA, Inc. ("TP-Link" or "Plaintiff") is an indirect subsidiary of the world's largest manufacturer of Wi-Fi products.[1]  Plaintiff has filed certain claims in this action against Defendants, Careful Shopper LLC ("CSC"), Adam J. Starke and Sora Starke (collectively, "Defendants").  As set forth herein at length, the claims asserted by Plaintiff here should not proceed in this District as they are subject to the first-filed doctrine and/or should be asserted as compulsory counterclaims in the previously filed and presently pending New York Action, wherein CSC has asserted affirmative claims against TP-Link which are related to the precise conduct which TP-Link places at issue with its ill-conceived filing in this District.  As set forth in the AC in the New York Action,[2] CSC, based in Brooklyn, New York, became a third-party seller on the Amazon Marketplace ("amazon.com") in 2016.  AC at ¶¶ 3-4.  CSC bought TP-Link® branded products during December 2016-March 2018 and sold them on its storefront at amazon.com.  In fact, CSC acquired and sold--over approximately two years--in the range of 200 TP-Link items out of the roughly 320 million items TP-Link sold worldwide during the period.[3]

---

[1] *Careful Shopper, LLC v. TP-Link USA Corp., et al.*, No. 1:18-cv-03019-RJD-RML (E.D.N.Y. 2018), Amended Complaint, filed June 4, 2018 ("AC"), Dkt. No. 6 at ¶5.  A copy of the AC filed in the New York Action is attached as Exhibit 1 to the Declaration of Mark Schlachet ("S. Decl.") submitted herewith.  Defendants request under Fed. R. Evid. 201(b)(2) that the Court judicially notice all cited pleadings and other publicly filed documents: "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *United States v. Corinthian Colleges,* 655 F.3d 984, 999 (9th Cir. 2011); *Location Servs., LLC v. Digital Recognition Network, Inc.,* 2018 U.S. Dist. LEXIS 138373 (E.D. CA 2018)

[2] The Affidavit of Adam J. Starke ("S. Aff."), CSC's managing member, is submitted concurrently herewith.

[3] https://www.tp-link.com/gr/press/news/17669/ (The figures are no less impressive when examined in terms of total sales volume, which reached a staggering 161 million (in 2016)— the equivalent of five products sold every second . . . total share of 45.9% for the WLAN market.")

As a manufacturer, it is not in TP-Link's financial best interest that "unauthorized" sellers, such as CSC, compete with TP-Link's "authorized" distribution channel, both as to Amazon and store purchasing.  Although TP-Link characterized CSC's commercialization of TP-Link products as trademark infringement, Amazon, as a matter of policy,[4] and here, specifically, refused to enforce TP-Link's claims of trademark infringement against CSC.[5]  This was not surprising as, with respect to New York sellers in particular, a special statutory provision renders manufacturers' warranty disclaimers null and void.  *See* NYGBL §349-b.  As alleged further in the AC, frustrated that it could not legitimately thwart CSC's business efforts, TP-Link decided to lodge false complaints with Amazon, accusing CSC and other New York sellers of counterfeiting.

TP-Link initially lodged two Reports of Violation ("IP Complaint(s)") against CSC on March 31, 2018.[6]  Although understanding it was acting lawfully, CSC sought to appease TP-Link, writing on April 3, 2018: "we are prepared to stop further selling ANY of the said products and others of which you deem that we are ineligible to sell."[7]  TP-Link not only ignored CSC's overtures, but lodged a third IP Complaint on April 9, 2018.[8]  TP-Link's three IP Complaints caused Amazon to terminate Plaintiff's contractual selling privileges on amazon.com.  AC at ¶ 7.  CSC was destroyed as an Amazon seller, has not sold a TP-Link item since

---

[4] *See* "We Do Not Enforce" at https://www.amazon.com/gp/help/reports/infringement.

[5] Exhibit 2 to the S. Decl. is an email wherein Amazon rejects TP-Link's request for enforcement action against CSC, finding "no misuse of the reported mark."

[6] S. Aff. at Exhibit 1.

[7] AC at ¶ 31.

[8] S. Aff. at ¶ 2.

March 2018 . . .  and will not sell a TP-Link item since then.[9]  CSC vehemently denies having ever sold or listed counterfeit TP-Link goods, and states affirmatively (and has documented) that it purchased and resold genuine, and only genuine, TP-Link products, sourced from authorized TP-Link resellers.[10]  *Id*. at ¶ 6.

On May 22, 2018, CSC filed the New York Action, alleging TP-Link's (i) tortious interference with CSC's existing and prospective business relationship with Amazon; and (ii) libel *per se*.  TP-Link sought to avoid litigating in the New York forum by challenging the New York District Court's personal jurisdiction. TP-Link's Motion to Dismiss is fully briefed and set to be argued in the New York Action on April 5, 2019.

## A. Events Just Prior to TP-Link's Filing of the Instant Complaint

In paragraph 1 of the AC, CSC pled "[s]uch sales [of TP-Link products as Plaintiff transacted] are absolutely lawful under the 'First Sale' and 'Fair Use' doctrines . . . and expressly permitted by Amazon, so long as the goods sold and delivered are authentic and the intellectual properties are not misused."  TP-Link did not contest this allegation in the New York Action.  Rather, in its pre-motion letter to the Hon. Raymond J. Dearie, TP-Link challenged the Court's general and specific personal jurisdiction over TP-Link, raising issues of constitutionality and "contacts." CSC was thereby tasked with the burden, under the United States Constitution and New York's CPLR §302 (a)(1)'s "long arm" statute of establishing the Court's specific personal jurisdiction over Defendant.  Plaintiff requested limited jurisdictional discovery.

Judge Dearie conducted an initial telephonic status conference on September 12, 2018, at which time he granted CSC's request for limited jurisdictional

---

[9] *Id.* at ¶12.

[10] During discovery in the New York Action Plaintiff provided proof of purchase as to every TP-Link product that Plaintiff ever purchased . . . all from authorized resellers of TP-Link products.

discovery.  The parties encountered discovery difficulties which they could not resolve whereupon, on November 11, 2018, CSC submitted a Rule 37 letter-Motion to Compel Discovery to the Hon. Magistrate-Judge Robert M. Levy.  TP-Link responded on November 15, 2018 and the matter was heard by Judge Levy on November 30, 2018.  Following a several hour hearing, Judge Levy compelled discovery to the extent TP-Link did not withdraw of record, and thereby moot, discrete jurisdictional issues on both the state-statutory and Constitutional levels.[11]

Thereafter, TP-Link filed this matter (the "California Action") on January 15, 2019, naming as defendants, in addition to CSC, its managing member, Adam J. Starke, and his wife, Sora Starke.  Mrs. Starke is a special education tutor and has never worked in, for or with CSC in any capacity.[12]

**B.  The *Factual Basis* of TP-Link's Instant Complaint, Counts I-VII**

Although TP-Link's largely-boilerplate Complaint in the California Action contains seven counts ranging in theory from trademark infringement to unjust enrichment, the singular factual basis of all such claims is found in paragraph 28 (and substantially repeated in paragraphs 42 and 51):

> Unauthorized sales of products bearing the TP-LINK® Marks do not convey the manufacturer's original warranty and *as such* are materially different than genuine TP-Link products. (emphasis added)

Thus, TP-Link *alleges* that it does not extend new product warranty coverage to an item purchased outside its authorized sales channel; that such fact makes an "unauthorized" item *materially different* from an "authorized" item; and that selling "unauthorized" items under the TP-Link mark therefore falsely

---

[11] S. Decl. at ¶ Exhibit 3 (Transcript of Rule 37 Hearing in New York Action).  The bulk of the issue preclusion dialog is found at pages 12:15 through 14:9.

[12] S. Aff. at ¶ 9.

4

Defendants' Notice of Motion & Motion to Dismiss or the Alternative, Transfer or Stay this Action
8:19-cv-00082-JLS-KES

conveys various meanings, sponsorship, sourcing, etc.  Purportedly, this confuses and deceives the public, harms TP-Link's good will, and is unfair to competitors under state, federal and common law.  According to the Prayer, the California Action calls for injunctive relief, compliance monitoring, accounting, disgorgement, actual damages exceeding $500,000, treble damages, punitive damages, attorney fees and costs.

### C. The Factual Basis of the Instant Complaint is Identical to the Factual Basis of TP-Link's Defense in the New York Action

Although the New York Action has not progressed beyond threshold motion practice, there have been significant interactions with both Judge Dearie and Magistrate-Judge Levy.  In the New York Action, TP-Link has proffered its defense of trademark infringement, *i.e.* lack of new product warranty coverage as to products sold by unauthorized resellers:

- Pre-Motion Letter of August 3, 2018 to Judge Dearie:[13] "TP- Link does not extend warranty coverage to products sold by unauthorized resellers like Plaintiff, rendering such products materially different from those sold by authorized resellers.  The sale of materially different products constitutes trademark infringement.  *See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 72–73 (2d Cir. 1987); *Bell Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 225–26 (S.D.N.Y. 2011).

- Rule 37 Response Letter of November 15, 2018 to Judge Levy:[14] "TP-Link does not extend warranty coverage to products sold by unauthorized resellers like Plaintiff, rendering such products materially different from those sold by authorized resellers.  The sale

---

[13] New York Action, Dkt. No. 15.

[14] *Id.* at Dkt. No. 23.

of materially different products constitutes trademark infringement. *See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 72–73 (2d Cir. 1987); *Bell Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 225–26 (S.D.N.Y. 2011).

- Amended Memorandum of Points and Authorities in Support of Motion to Dismiss, filed February 27, 2019 (well after the instant filing): [15] "Specifically, TP-Link does not extend warranty coverage to products sold by unauthorized resellers, rendering such products materially different from those sold by authorized resellers. The sale of materially different products constitutes trademark infringement. *See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 71-73 (2d Cir. 1987); *Bell Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 225-26 (S.D.N.Y. 2011).

## D. TP-Link's Claims Here and Its Defense in the New York Action Must Overcome Contrary New York Law and Second Circuit Precedent

The factual basis of TP-Link's Complaint here (and its defense in the New York Action) appears unable to survive a unique New York statutory provision which renders a manufacturer's disclaimer of new warranty coverage as to goods purchased from "unauthorized" dealers contrary to New York state law, unenforceable and void; and this applies to all New York purchases, including those online, regardless of the consumer's state of residence.  Section 369-b of the New York General Business Law provides as follows:

A warranty or guarantee of merchandise may not be limited by a manufacturer doing business in this state *solely* for the reason that such merchandise is sold by a particular dealer or dealers, or that the dealer

---

[15] *Id.* at Dkt. No. 34.

who sold the merchandise at retail has, since the date of sale, either gone out of business or no longer sells such merchandise. Any attempt to limit the manufacturer's warranty or guarantee for the aforesaid reason is void.

As to Section 369-b's extraterritorial application:[16]

Although no case brought to the Court's attention addresses the issue, the principles that govern the extraterritorial effect of New York consumer protection laws provide sufficient indication of how the New York Court of Appeals would rule if faced with the issue. Applying those principles, I conclude that all of Defendants' customers, wherever located, are entitled to the protection of *GBL 369-b*, because the transaction in which they purchased their goods was a 'New York transaction.'

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208 *227; 2011 U.S. Dist. LEXIS 146701, **45; *see* also *Technomarine SA v. Jacob Time, Inc.*, 2012 U.S. Dist. LEXIS 90261, at *9 n.2 (S.D.N.Y. June 22, 2012) (". . . Jacob Time's customers would not have received lesser warranty protections - and, in turn, lesser quality watches - on account of Jacob Time being an allegedly unauthorized retailer.")

Thus, both the New York and California Actions find critical mass in the legality of CSC's advertising and sale of TP-Link products and whether such activities were wrongful vis-à-vis TP-Link's intellectual property.  Therefore, this California Action, which was filed *after* the New York Action, should be dismissed or, alternatively transferred or stayed.

## II. ARGUMENT

### A.    This Case Should be Dismissed or, in the Alternative, Transferred

---

[16]"Lower courts applying this standard have held that 'a telemarketing site and *even the receipt of Internet orders physically within New York State* appear to form a New York locus for a transaction covered by the New York State consumer protection statutes.'  *Id*. at 177 (citing cases) (emphasis added); *Leider v. Ralfe*, 387 F.Supp.2d 283, 294 (S.D.N.Y. 2005) (Baer, J.) (same)."  *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 228 (S.D.N.Y. 2011)

1

**or Stayed Under the First-to-File Rule.**

2

**1.  Applicable Test**

3   "[W]hen two identical actions are filed in courts of concurrent jurisdiction,

4   the court which first acquired jurisdiction should try the lawsuit and no purpose

5   would be served by proceeding with a second action."  *Pacesetter Sys., Inc. v.*

6   *Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982); *see also Barnes & Noble, Inc. v.*

7   *LSI Corp.*, 823 F. Supp. 2d 980, 986 (N.D. Cal. 2011) ("When two actions

8   involving nearly identical parties and closely related [ ] questions are filed in

9   separate districts . . . the general rule is that the case first filed takes priority, and

10  the subsequently filed suit should be dismissed or transferred or stayed." Under

11  this rule, known as the "first to file" rule, "when cases involving the same parties

12  and issues have been filed in two different districts, the second district court has

13  the discretion to transfer, stay, or dismiss the second case." *Cedars-Sinai Med. Ctr.*

14  *v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).

15  Courts analyze three factors in determining whether to apply the first-to-file

16  rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity

17  of the issues.  *Dewan v. M-I, L.L.C.*, 2015 WL 3797462, at *4 (E.D. Cal. 2015).

18  "[C]ourts in nearly every circuit have held that the court in which the second action

19  was filed should defer to the courts in the first-filed action." *Id.* at *4 n. 3.

20

**2.  Application of the Applicable Test**

21  All three factors of the first-to-file rule are met in this case.  First, the New

22  York Action was filed prior to the California Action.  The New York Action was

23  filed on May 22, 2018, some seven months prior to the instant filing on January 15,

24  2019.

25  Second, the parties in the New York Action and this action are substantially

26  similar.  "[Courts have] held that the first-to-file rule does not require strict identity

27  of the parties, but rather substantial similarity." *Adoma v. Univ. of Phoenix, Inc.*,

28

8

711 F. Supp. 2d 1142, 1147 (E.D. Cal.)  "The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters."  *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n. 6 (N.D. Cal. 2008).

CSC and TP-Link are the principal parties in both actions.  While TP-Link joined Mr. and Mrs. Starke in the instant case, the relief sought/defense advanced depend primarily upon the legality of CSC's advertising and sale of TP-Link products.  This similarity in parties is enough to satisfy the second prong of the first-to-file rule.

Third, the factual issues in the New York Action and the California Action are substantially similar because they both arise out of CSC's advertising and sale of TP-Link products.  The issues in both cases need not be identical, only substantially similar.  *Adoma*, 711 F. Supp. 2d at 1147.  To determine whether two suits contain substantially similar issues, the court looks at whether there is "substantial overlap" between the two suits.  *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015).

The central issue in the California Action is whether CSC violated TP Link's intellectual property rights, and that issue is fundamental to TP-Link's defense in the New York Action as well.  The focus of the instant complaint is the alleged lack of warranty coverage on products sold by unauthorized resellers.  That focus has been repeatedly advanced in the New York Action.  It is irrelevant that this case joins CSC's privies as defendants or that TP-Link in this case has asserted additional legal causes of action.  There will be substantial overlap in the facts, witnesses, discovery, and arguments.

Because the New York Action was filed before this action and both actions involve the same or substantially similar issues and parties, this case should be (i) dismissed or, in the alternative, (ii) transferred to the court in which the New York

Action is pending, or (iii) stayed pending disposition in the first-filed action.
*Nationstar Mortg., LLC v. Truman Capital Advisors,* 2013 U.S. Dist. LEXIS
202188, at \*5 (C.D. Cal. 2013).

> **B.** **This Case Should be Dismissed or, in the Alternative, Transferred or Stayed Under Rule 13(a) of the Federal Rules of Civil Procedure.[17]**

> **1.** **Applicable Test**

The Second Circuit applies Civil Rule 13(a) with a so-called Logical
Connection Test.  *Critical-Vac Filtration Corp. v. Minuteman Intern., Inc.*, 233
F.3d 697 (2000); *AT & T Corp. v. American Cash Card Corp.*, 184 F.R.D. 515
(1999).  The Ninth Circuit test is the same:

> A party who fails to plead a compulsory counterclaim in a prior action,
> as required under Federal Rule of Civil Procedure 13(a), is precluded
> from raising that claim in a later action . . . .

> A counterclaim is compulsory where it: (1) 'arises out of the transaction
> or occurrence that is the subject matter of the opposing party's claim';
> and (2) exists at the time the counterclaimant serves its pleading . . .

> The Ninth Circuit's 'logical relationship test' holds that a claim arises
> from the same transaction, and thus is compulsory, where it 'arises from
> the same aggregate set of operative facts' as the opponent's
> pleadings.  *See In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992).

---

[17] "A court may dismiss a claim under Rule 12(b)(6) if the claim is barred by Federal Rule of Civil Procedure 13.  *See SDMS, Inc. v. Rocky Mountain Chocolate Factory, Inc.*, No. 08 CV 0833 JM (AJB), 2008 U.S. Dist. LEXIS 90276, 2008 WL 4838557, at \*2 (S.D. Cal. 2008) [\*8]  (citing *Baker v. Gold Seal Liquors*, 417 U.S. 467, 469 n.1, 94 S. Ct. 2504, 41 L. Ed. 2d 243 (1974)); *see also Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, 2009 U.S. Dist. LEXIS 79738, 2009 WL 2431993, at \*5 (S.D. Ill. July 31, 2009).  Once a Court determines "that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action."  6 Wright & Miller § 1418; *see also Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1201 (9th Cir. 2010); *Genentech v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)."

*MGA Entm't, Inc. v. Mattel, Inc.,* 2012 U.S. Dist. LEXIS 22055, at *40 (C.D. Cal. 2012).

## 2. Application of the Applicable Test

Applying the cited authorities to this matter, TP-Link is precluded from raising its trademark infringement claims and their offshoots in this Court. For the same reasons as discussed above, the issues in the New York Action and this action are substantially similar because they both arise out of the same facts and circumstances. It is precisely CSC's advertising and selling of TP-Link products that undergirds both TP-Link's instant California Action and its defense in the New York Action. As shown above, TP-Link's defense in New York; *i.e.*, that "unauthorized" sales did not carry a new product warranty and were, therefore, materially different than "authorized" sales, is the central pillar of TP-Link's affirmative position here. It is unquestionably the case that TP-Link's trademark infringement claims bear a logical relationship to the New York Action.

The fact that TP-Link has alleged multiple claims under federal, state and common law is of no moment. The question is whether "the facts necessary to prove the two claims substantially overlap." *Mophie, Inc. v. ABM Wireless, Inc.*, 2015 U.S. Dist. LEXIS 189512, at *4-5 (C.D. Cal. 2015) "What matters [in this inquiry] is not the legal theory but the *facts*." *Id.* at *8. So long, as here, there is an aggregate core of operative facts in common, the requisite logical relationship will be found and Rule 13(a) policies triggered. *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001) (quoting *In re Pinkstaff,* 974 F.2d at 115).

## 3. TP-Link's Claims All Arose Prior to Commencement of this Action

Inadvertently, Defendants assume, TP-Link misleads in ¶27 of the Complaint when it states: "[u]pon information and belief since at least 2016, Defendants have been marketing and selling, *and continues to market and sell,* networking products bearing the infringing TP-LINK® Marks, including such

products on Amazon." (emphasis added.)  This is simply untrue.

AC ¶36 alleges and documents CSC's permanent expulsion from Amazon effective May1, 2018, more than seven months prior to commencement of the California Action.   On June 25, 2018 TP-Link's senior trial counsel (i) requested that Plaintiff provide proof that the cause of CSC's expulsion from Amazon was indeed TP-Link's IP Complaints, and (ii) inquired as to Mr. Starke's post-Amazon means of making a living, *i.e.*, whether he might be selling on Amazon under a new identity.  CSC counsel responded: "Plaintiff's principal has now charted a new direction for his survival and that of his family."[18]  Accordingly, any allegations that TP-Link has about continuing sales by CSC of TP-Link products are, in addition to being frivolous, too conclusory to accept as well-pled allegations. *MGA Entm't, Inc. v. Mattel, Inc*., 2012 U.S. Dist. LEXIS 22055, at *29 (C.D. Cal. 2012) ("MGA's allegation that antitrust violations 'continue' or are 'uninterrupted' is too conclusory to state a claim.").

### 4. <u>Forum Shopping is Contrary to Good Policy and Should Weigh Heavily</u>

This Court has elsewhere expressed aversion to reactive, forum-shopped litigation, stating that "forum shopping—strongly weighs against exercising jurisdiction:"

> Forum shopping refers to '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.' *R.R. Street, 656 F.3d at 981* (quoting Black's Law Dictionary 726 (9th ed. 2009)). 'To avoid forum shopping, courts may consider 'the vexatious or reactive nature of either the federal or the state litigation.' *Id.*

*Nationstar Mortg., LLC v. Truman Capital Advisors,* 2013 U.S. Dist. LEXIS 202188, at *7 (C.D. Cal. 2013).  This matter is transparently "vexatious and reactive," as discussed above.  Not only did TP-Link desperately seek to extricate

---

[18] S. Decl. at ¶4.

itself from the Eastern District of New York but, following a few disappointing court appearances, it elected to file this reactive litigation.

*Nationstar, supra,* presented an issue of federal-state forum shopping while this case presents federal-federal forum shopping.  State-federal forum shopping presents special issues.  In cases involving two federal districts, however, forum shopping is also viewed with disfavor, as discussed in *Alltrade, Inc. v. Uniweld Prods.,* 946 F.2d 622 (9th Cir. 1991).  Where both actions are Federal, "Rule 13(a) operates in tandem with the so-called first-to-file rule." *NBC Studios, LLC v. Dish Network Corp.*, 2012 U.S. Dist. LEXIS 186946, at \*8 (C.D. Cal. 2012).

Accordingly, Defendants do not so much advance forum shopping as an independent ground for dismissal/transfer/stay; rather, they submit that it is a factor to be considered in tandem with the first-to-file doctrine and the Rule 13(a) analysis. *Id.*

## III.  CONCLUSION

Pursuant to the Court's broad discretion to implement the Federal Rules of Civil Procedure, Defendants respectfully urge that the Court decline to exercise jurisdiction of this case and that the Complaint be dismissed or, alternatively, transferred or stayed.

Dated: April 3, 2019

SHEPHERD, FINKELMAN, MILLER & SHAH LLP

By: */s/ James C. Shah*

James C. Shah (SBN 260435)
35 E State Street
Media, PA 19063
Phone: (610) 891-9880
Fax: (866) 300-7367
jshah@sfmslaw.com

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICE OF MARK
SCHLACHET

Mark Schlachet *(admitted pro hac vice)*
3515 Severn Road
Cleveland, Ohio 44118
Telephone: (216) 225-7559
Facsimile: (216) 932-5390
markschlachet@me.com

*Attorneys for Defendant Careful
Shopper, LLC, Adam Starke and Sora
Starke*

Defendants' Notice of Motion & Motion to Dismiss or the Alternative, Transfer or Stay this Action
8:19-cv-00082-JLS-KES