# EXHIBIT B

```
 1  UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
 2  ----------------------------------------x
    CAREFUL SHOPPER, LLC,
 3
                        Plaintiff,
 4
            versus                              18 CV 3019 (RJD)
 5
    TP-LINK USA CORPORATION,
 6
                        Defendant.
 7
            and
 8
    TP-LINK NORTH AMERICA INC
 9  145 S STATE COLLEGE BLVD STE 400
    BREA, CA 92821-5833,
10                                              U.S. Courthouse
                        New Party Defendant.    Brooklyn, New York
11  ----------------------------------------x
                                                April 5, 2019
12                                              12:00 p.m.

13          Transcript of Civil Cause for Oral Argument

14  Before:     HONORABLE RAYMOND J. DEARIE,
                                District Court Judge
15
                              APPEARANCES
16
    Attorney for Plaintiff:
17  LAW OFFICES OF MARK SCHLACHET
    3515 Severn Road
18  Cleveland, Ohio 44118
    BY:  MARK SCHLACHET, ESQ.
19
    Attorney for Defendant:
20  LTL ATTORNEYS LLP
    300 S Grand Avenue, 14th Floor
21  Los Angeles, California 90071
    BY:  PRASHANTH CHENNAKESAVAN, ESQ.
22       HEATHER AUYANG, ESQ. (via telephone)

23  Official Court Reporter:
    MICHELE NARDONE, CSR - 718-613-2601 - mishrpr@aol.com
24
    Proceedings recorded by mechanical stenography.  Transcript
25  produced by computer-aided transcription.
```

MICHELE NARDONE, CSR -- Official Court Reporter

1   MS. AUYANG: Good afternoon, Your Honor. This is
2   Heather Auyang, for Defendant TP-Link USA Corporation and
3   TP-Link North America Inc.
4       THE COURT: Good afternoon.
5       Mr. Chennakesavan?
6       MR. CHENNAKESAVAN: Perfect, your honor.
7       THE COURT: The name is?
8       MR. CHENNAKESAVAN: It's of Indian origin.
9       THE COURT: Indian. Tamil?
10      MR. CHENNAKESAVAN: Yes, that's correct.
11      THE COURT: Interesting. I have had some experience.
12      MR. CHENNAKESAVAN: Positive, I hope.
13      THE COURT: I'm sorry?
14      MR. CHENNAKESAVAN: Positive, I hope.
15      THE COURT: Well, it depends on who you ask, as is the
16  case with everything we do here, right? It depends on who you
17  ask.
18      Well, I'm tempted to give you a little introductory
19  comment or two so you know where I am. I have great doubts
20  about jurisdiction here, just to be blunt, but I'm reminded of
21  the KISS test. Is everybody familiar with the KISS test? If
22  you are a golfer, you know what the KISS test is. KISS
23  standing for Keep It Simple, Stupid. And that's pretty hard to
24  do, getting through all of this.
25      But, in my head, if I keep it simple, which is why I

1  have some reservations, it's TP-Link transacting business in
2  New York -- without question, as they concede -- with folks
3  like B&H, no direct contact that I can discern with Careful
4  Shopper.  Careful Shopper acquires these products, sells them
5  on Amazon to third parties, according to some, in violation of
6  the property rights of TP-Link.  That information is then
7  communicated by a California operation to Seattle-based Amazon;
8  and Amazon, rightly or wrongly, takes rather definitive action.
9         That's pretty simple -- maybe too simple, I will
10 concede -- but, on the basis of that, I don't see how we drag
11 TP-Link into a New York court, when, after all, they are
12 selling to B&H, of course, and comparable operations.  It has
13 nothing to do really with the gravamen of the lawsuit, which is
14 whether or not your client was libeled by another party -- or
15 even by TP-Link, if you want to put it that way, people acting
16 on their behalf, to protect their property rights.  I don't get
17 it.  I don't see it.
18         I have read the circle of -- what did you call it, the
19 circle of?
20         MR. CHENNAKESAVAN:  Of commercial activity is the
21 theory.
22         THE COURT:  You had my attention, but I don't find a
23 single product that makes the full circle, unless I have got my
24 light bulbs confused.
25         MR. SCHLACHET:  You do, Your Honor; and this week,

1  a single bulb out of the two-pack.  The two-pack merely means

2  the seller is selling two bulbs and giving you a price break

3  for buying two instead of one.

4          THE COURT:  Does that involve one identifying number?

5          MR. SCHLACHET:  Pardon?

6          THE COURT:  The product identifying number, is it one

7  or two?

8          MR. SCHLACHET:  It involves a number of different

9  numbers, but the numbers are actually on the package, but the

10 numbers vary from when you buy -- I'm sorry, Your Honor?

11         THE COURT:  No.  Go ahead.  I'm listening.

12         MR. SCHLACHET:  When you go to purchase these things,

13 the dealers have their own stock numbers.  There is a UPC

14 number, I believe.  There is an ASA, an Amazon special number

15 or that item.  There are numerous different numbers.

16         But Mr. Stark, who is the managing member, is here

17 today; and he is prepared to testify, if necessary, that this

18 is exactly how things go.  You guy a two-pack, it comes to your

19 premises, you unload it, you send it to Amazon FBA, and Amazon

20 FBA then has what you sent them that you then list and somebody

21 buys.  When he sent it to Amazon FBA it was two one-packs.

22         But, Your Honor, if I may --

23         THE COURT:  Why didn't you arbitrate the thing?  Your

24 client's letter suggests if you can't work this out, we may

25 have to arbitrate.  All this time and money, expense, and

1 briefing.  You have a litigation, as I understand it, pending
2 in California, except you have changed sides, you are on the
3 plaintiff's side in trademark litigation, involving essentially
4 the same subject matter?
5         MR. CHENNAKESAVAN:  The same parties, Your Honor.
6         THE COURT:  The same parties, I know.
7         MR. CHENNAKESAVAN:  The subject matter is broader
8 because it is relating to an ongoing effort by Careful Shopper
9 and its principals to violate the trademark; but if I may just
10 start with Mr. Schlachet's demonstration today.
11         As an initial matter, Mr. Schlachet admits that he has
12 come up with a circle of commercial activity theory.  No court
13 has ever endorsed this theory that because someone purchases a
14 product from the Internet, then turns it around, goes from a
15 purchaser to a retailer, and then markets it back on the
16 Internet, someone then buys it, and that somehow gives rise to
17 jurisdiction in the seller's state.
18         THE COURT:  Rather preposterous as a proposition of
19 law, but go ahead.
20         MR. SCHLACHET:  If I can respond to that, Your Honor.
21         There is a problem in how folks are thinking about
22 this issue that I see in this case, and it's this.  The Supreme
23 Court of the United States pointed it out in a case called
24 Walden versus Fiore, that Your Honor may be familiar with,
25 maybe not.

MICHELE NARDONE, CSR -- Official Court Reporter

1        THE COURT: Only from your reference. Go ahead.
2        MR. SCHLACHET: It is not -- what's important in this
3  case is not the identities of the parties. There is only one
4  thing that's important in this case, and that is the
5  transactions of TP-Link in New York, New York transactions.
6        Now, allow me to say that we have a case that's cited,
7  oddly enough, in TP-Link's brief. It's called Bel Canto Design
8  versus MSS Hifi, Inc. That's at 837 F.Supp.2d 208. In that
9  case, Your Honor, the Southern District of New York held very
10 squarely that transactions under Section 369 of the New York
11 General Business Law are New York transactions. They held it.
12 That was a holding. It was a holding, they are New York
13 transactions. They also --
14       THE COURT: The only New York transaction that I see
15 in the papers is the initial transaction between TP-Link and
16 folks like B&H.
17       MR. SCHLACHET: Your Honor, if I may.
18       THE COURT: I don't see proof of any other New York
19 transactions.
20       MR. SCHLACHET: I'm sorry to disagree with Your Honor,
21 but --
22       THE COURT: Please do.
23       MR. SCHLACHET: -- I have to strengthen my resolve in
24 front of such and august court. It doesn't pass me you are on
25 the FISA court, which is -- okay.

MICHELE NARDONE, CSR -- Official Court Reporter

1           The transactions of Mr. Lei in purchasing products
2   from Careful Shopper, there were two transactions where he
3   purchased about 31 products, 13 of which were returned.  In our
4   view, Your Honor, those are all New York transactions.  That
5   was the holding of Bel Canto Design versus MSS Hifi.
6           THE COURT:  All right.  Let me stop you there.
7           Speak to that.
8           MR. CHENNAKESAVAN:  Your Honor, Bel Canto, first of
9   all, addressed a very different situation, and here is why.
10  The purchasers in Bel Canto went onto the website of the
11  defendant.  The defendant operated its own website through
12  which it sold products.  Individuals would go onto the
13  defendant's website, see that the defendant was shipping
14  products from New York, place the order, and then receive them
15  from New York.
16          There is absolutely no evidence -- and I think this is
17  counter factual to even suggest -- that Careful Shopper has a
18  storefront that's independent of Amazon.  What we do know is
19  that Mr. Lei and third parties went on to Amazon.com.  They
20  purchased products from Amazon.com.  There is absolutely
21  nothing in the record that Careful Shopper's location in
22  New York was even disclosed when someone is purchasing from
23  Amazon.com.
24          So what we have here are a series --
25          THE COURT:  In some instances they are noted as the

MICHELE NARDONE, CSR -- Official Court Reporter

1  seller.
2           MR. CHENNAKESAVAN:  Correct, Your Honor, but that's
3  it.
4           So what we have here is someone who is logging onto
5  Amazon.com, sitting in a computer in California, placing an
6  order on Amazon.com, where the identity of the seller is
7  indicated as Careful Shopper.  There is absolutely no
8  indication that Careful Shopper is shipping these products from
9  New York or that the purchaser is purchasing from New York.
10          That's the key distinction between Bel Canto and here,
11 because in Bel Canto the purchasers would go onto the
12 storefront and see that they are buying directly from Bel Canto
13 located in New York, and if you click on the contact us,
14 location website, you ostensibly see that it's a New York
15 company.  That's a key difference.
16          So the starting point for personal jurisdiction
17 analysis is always the conduct of the defendant.  Did the
18 defendant purposely avail itself of the form?
19          So here, even if you assume that the circle of
20 commercial activity somehow works out and there is some hook on
21 these purchases, what we have is a purchaser placing orders on
22 Amazon, from California, receiving products that are warehoused
23 by Amazon.  Let's not forget that.  So the products were not
24 shipped directly by the defendant.  They are warehoused by
25 Amazon, and there is nothing in the record as to where they

1      THE COURT: I think you meant it transacts business in
2 New York.
3      MR. CHENNAKESAVAN: Yes, Your Honor. And that doesn't
4 mean that any claim that touches those products gives rise to
5 jurisdiction in New York.
6      Opposing counsel cited the Albino case from the
7 Western District of New York in 2018, and there, the at-issue
8 defendant was selling a component into New York that was
9 incorporated into a machine that caused injury. But everyone
10 admitted that it wasn't that component that caused the injury,
11 and there was, therefore, a break in the chain.
12      ==So simply placing something into the stream of==
13 ==commerce or engaging in attenuated transactions does not give==
14 ==rise to jurisdiction under 302(a)(1). There has to be a==
15 ==substantial nexus or an articulable nexus, as the court in==
16 ==Licci identified, between the in-state conduct --==
17      ==THE COURT: I understand. I think that's your==
18 ==problem.==
19      MR. SCHLACHET: I agree with that, Your Honor; but, if
20 I may resume where I was.
21      THE COURT: Yes.
22      MR. SCHLACHET: In this Bel Canto case, this is what
23 the court said in order to make something a New York
24 transaction under Section 369. I quote: Lower courts applying
25 this standard have held that a telemarketing site and even the

MICHELE NARDONE, CSR -- Official Court Reporter

1   As Your Honor has astutely noted, the purchases are
2   simply not New York transactions.  There is no evidence.  No
3   case has ever held that purchases from the Internet through
4   Amazon or third-party seller without knowledge of where the
5   goods are coming from gives rise to jurisdiction in the
6   seller's forum.  No court has ever held that.
7           THE COURT:  All right, gents.  I have shared with you
8   my skepticism, to be candid with you.  I'm not sure I have been
9   shaken from that position, but I will give it a little more
10  thought and will get back to you promptly.
11          MR. SCHLACHET:  Thank you, Your Honor.
12          MR. CHENNAKESAVAN:  Thank you, Your Honor.
13          THE COURT:  Meanwhile, it seems to me -- well, the
14  trademark is a different matter, but I'm tempted to discuss the
15  merits of the underlying claims, but we will save that perhaps
16  for another day.  Have a good weekend.
17          MR. CHENNAKESAVAN:  Thank you, Your Honor.
18          MR. SCHLACHET:  Thank you, Your Honor.
19          (End of proceedings.)
20                          o O o
21
22  Certified to be a true and accurate transcript.
    /s/ Michele Nardone
23  MICHELE NARDONE, CSR -- Official Court Reporter
24
25

MICHELE NARDONE, CSR -- Official Court Reporter