**LTL ATTORNEYS LLP**

Heather F. Auyang (SBN 191776)
heather.auyang@ltlattorneys.com
Joe H. Tuffaha (SBN 253723)
joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
prashanth.chennakesavan@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel:  (213) 612-8900
Fax:  (213) 612-3773

*Attorneys for Plaintiff*
*TP-Link USA Corporation*

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

James C. Shah (SBN 260435)
jshah@sfmslaw.com
Kolin C. Tang (SBN 279834)
ktang@sfmslaw.com
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Tel: (323) 510-4060
Fax: (866) 300-7367

*Local Counsel for Defendants*
*Careful Shopper, LLC, Adam Starke*
*and Sora Starke*

Additional Counsel Noted Within

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TP-LINK USA CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CAREFUL SHOPPER, LLC, a New York company et al.,<br><br>Defendants. | CASE NO.: 8:19-CV-00082-JLS-KES<br><br>**PARTIES' AMENDED JOINT RULE 26(f) REPORT**<br><br>Complaint Filed: January 15, 2019<br>Trial Date: None Set |


Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26-1, TP-Link USA Corporation ("Plaintiff" or "TP-Link") and Defendants Careful Shopper, LLC, Adam J. Starke, and Sora Starke (collectively, "Defendants") (together, the "Parties") jointly submit the following amended report. The Parties conducted a telephonic conference on May 6, 2019. Heather F. Auyang and Tiffany Elias participated on behalf of Plaintiff and James C. Shah and Mark Schlachet participated on behalf of Defendants.

On June 19, 2019, the Court issued an Order staying this action pending the Eastern District of New York's disposition of TP-Link's Motion to Dismiss. ECF No. 30. The Court noted that the "decision of whether to transfer this case to the Eastern District of New York may be mooted by the New York Court's determination of TP Link's personal jurisdiction motion." *Id*. On October 3, 2019, the Parties filed a notice of decision that the EDNY granted TP-Link's motion to dismiss by concluding that it lacked personal jurisdiction over TP-Link, and closed the case. ECF No. 32.

On October 18, 2019, the Court issued an order lifting the stay and directed the Parties to file an Amended Joint Rule 26(f) Report, ECF No. 33, which document follows. On October 31, the Parties conducted a second telephonic conference. Prashanth Chennakesavan and Heather Auyang participated on behalf of Plaintiff and James C. Shah and Mark Schlachet participated on behalf of Defendants.

**A.     Statement of the Case**

<u>Plaintiff's Statement of Case</u>: Plaintiff engages in the marketing and sale of high-quality computer networking products, including switches, routers, and other computer accessories. Plaintiff is the exclusive licensee of numerous registered trademarks for the mark "TP-LINK" in connection with computer networking products (collectively, "TP-LINK® Marks"). Through longstanding use, advertising and registration, the TP-LINK® Marks have achieved a high degree of consumer recognition throughout the United States. Plaintiff has expended a considerable

1  amount of money in advertising, promoting, and marketing goods featuring the TP-
2  LINK® Marks.  As such, the TP-LINK® Marks and the associated goodwill are
3  valuable assets of Plaintiff.
4      Defendant Careful Shopper is a third-party seller on the Amazon marketplace,
5  meaning that it purchases and subsequently offers for sale goods bearing other
6  intellectual property holders' trademarks. Defendants Adam J. Starke and Sora
7  Starke own and operate Careful Shopper.
8      Careful Shopper admits that from December 2016 to at least March 2018,
9  Defendants purchased hundreds of TP-Link-branded technology products.
10 Defendants then marketed and sold the TP-Link products to downstream consumers
11 nationwide through the Amazon marketplace. Defendants made such sales despite
12 their own admission that Careful Shopper is not an authorized TP-Link reseller.
13     This action arises out of Defendants' unauthorized incorporation and
14 infringing use of the TP-LINK® Marks in the sale of TP-Link-branded technology
15 products. Moreover, the unauthorized sales of products bearing the TP-LINK®
16 Marks do not convey the manufacturer's original warranty and as such are materially
17 different than genuine TP-Link products. Many other companies selling networking
18 products follow this same policy.  Indeed, consistent with this policy, Amazon's
19 "Condition guidelines" requires that a product is only considered "New" when the
20 "Original manufacturer's warranty, if any, still applies, with warranty details
21 included in the listing comments."
22 Defendants' Statement of Case:
23     **Regarding TP-Link's Existing Complaint**: Defendants acknowledge that
24 Careful Shopper is a third-party seller on the Amazon marketplace and that it has
25 sold TP-Link-branded technology products.  Nevertheless, under governing law,
26 Defendants' conduct was, at all times, appropriate and legal.
27     Plaintiff TP-Link complains that Defendant, Careful Shopper, listed TP-Link
28 products as an additional seller on various Amazon product detail pages featuring

such products.  Careful Shopper does not dispute this allegation but maintains that its actions were not violative of any laws.

TP-Link's claims of trademark infringement are plainly without merit.  First, Sellers of "grey products" -- products sold outside the manufacturers authorized sales channel -- are ordinarily protected under the "First Sale Doctrine," which limits trademark protection to the first sale, i.e. from manufacturer to first-tier purchaser, *and no further.*  TP-Link, however, claims that the First Sale Doctrine does not protect Careful Shopper CSC because TP-Link does not extend its original manufacturer's warranty to grey market goods.  This proposition is not accurate as a matter of law.  *See Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073 (9th Circ. 1995) at n.3, citing *NEC Elecs. v. Cal Circuit Abco,* 810 F.2d 1506, 1508 (9th Circ. 1987) ("first sale" doctrine applied despite the district court's finding "that some purchasers . . . mistakenly thought their chips were protected by [the producer's] servicing and warranties." *See Huf Worldwide, LLC v. Wal-Mart Stores, Inc.,* 2017 U.S. Dist. LEXIS 28927.  Further, Careful Shopper is a New York resident and under NYGBL 369-b, no warranty disclaimer by TP-Link would be permitted under the circumstances present here.

TP-Link argues further that the absence of an original manufacturer's warranty constitutes a "material difference" between "authorized" and "unauthorized' sales of TP-Link products; and the presentation of product by CSC is fraudulent, confusing and otherwise in derogation of the value of TP-Link's trademark(s).  This wholly-conclusory proposition is insufficient and incorrect for myriad reasons, including, but not limited to, that (1) TP-Link may, in fact, extend its warranty to products purchased from third-party sellers; and (2) Amazon has already rejected Plaintiff's complaints of trademark infringement.

**Regarding Careful Shopper's Anticipated Counterclaims and Third-Party Complaint:**   TP-Link USA, Inc. is a California corporation ("TP-Link" or "Plaintiff"), an indirect subsidiary of the world's largest manufacturer of Wi-Fi

products.[1]  Defendant, Careful Shopper LLC ("CSC"), a Brooklyn, New York resident, became a third-party seller on the Amazon Marketplace in 2016. AC at ¶¶3-4. CSC bought TP-Link® branded products during December 2016-March 2018 and sold them on its storefront at amazon.com. In fact, Plaintiff acquired and sold--over roughly two years--in the range of two hundred TP-Link items out of the roughly 320 million items TP-Link sold worldwide during the period,[2] i.e. roughly .000062%.

The central premise of TP-Link's lawsuit is that the marketing of .000062% of its products by a third-party "other seller" on Amazon has caused it grievous harm. As the Court is aware, CSC believes this lawsuit was commenced solely to retaliate for and gain leverage in the litigation CSC first commenced against TP-Link for destroying CSC's Amazon-related business. Defendant Sora Starke has nothing to do with the management or operation of CSC, while Adam Starke is/was its manager.

As a manufacturer it is not in TP-Link's financial best interest that "unauthorized" sellers such as CSC compete with TP-Link's "authorized" distribution channel, both as to Amazon and store purchasing. Although TP-Link viewed CSC's commercialization of TP-Link products as trademark infringement, Amazon as a matter of policy and here, specifically, refused to enforce the TP-Link's claims of trademark infringement against CSC. As to New York sellers in particular, moreover, a special statutory provision renders manufacturers' warranty disclaimers null and void. *See* NYGBL §349-b, discussed *infra*. Accordingly, TP-Link decided to "go nuclear" against CSC and other New York sellers by lodging false complaints to Amazon of felonious conduct, to wit: counterfeiting, a charge that Amazon enforces vigorously. TP-Link does not contend in this litigation (as it did in its IP Complaints

---

[1] *Careful Shopper, LLC v. TP-Link USA Corp., et al.*, No. 1:18-cv-03019-RJD-RML (E.D.N.Y. 2018), Amended Complaint, filed June 4, 2018 ("AC"), Dkt. No. 6 at ¶5. A copy of the Amended Complaint in the so-called New York Action was annexed as Exhibit 1 to the Declaration of Mark Schlachet (S. Decl.") submitted with ECF 21-3 herein at page 110.

[2] https://www.tp-link.com/gr/press/news/17669/ (The figures are no less impressive when examined in terms of total sales volume, which reached a staggering 161 million [in 2016]— the equivalent of five products sold every second . . . total share of 45.9% for the WLAN market.")

to Amazon) that CSC sold counterfeit goods, but only that CSC infringed its trademark.

TP-Link libeled Plaintiff as a counterfeiter in three (3) separate Reports of Violation (hereinafter "IP Complaints') to Amazon, asserting Plaintiff's *listing* (not selling) of counterfeit TP-Link products on amazon.com. AC at ¶5. TP-Link knows that Amazon will often terminate the platform selling privileges of a thrice-reported counterfeiter.

TP-Link lodged two (2) IP Complaints against CSC on March 31, 2018. CSC sought to appease TP-Link, writing on April 3, 2018: "we are prepared to stop further selling ANY of the said products and others of which you deem that we are ineligible to sell." TP-Link not only ignored CSC's overtures but, with malice, lodged a third IP Complaint on April 9, 2018. TP-Link's three (3) IP Complaints caused Amazon to terminate Plaintiff's contractual selling privileges on the Amazon Marketplace (amazon.com). AC at ¶7. CSC was destroyed as an Amazon seller, has not sold a TP-Link item since March 2018 . . . and will not sell a TP-Link item hereafter. Plaintiff denies having ever sold or listed counterfeit TP-Link goods, and states affirmatively (and has documented) that it purchased and resold genuine, and only genuine TP-Link products, sourced from authorized TP-Link resellers. AC at ¶6.

**New York Action**: On May 22, 2018 CSC filed a two-count complaint in the United States District Court for the Eastern District of New York alleging TP-Link's (i) tortious interference with CSC's existing and prospective business relationship with Amazon, and (ii) libel *per se* (the "New York Action"). TP-Link prevailed on its Rule 12 Motion to Dismiss for want of personal jurisdiction in the New York Action, but failed on its Motion to Dismiss for want of subject matter jurisdiction, which Judge Dearie construed as a Motion to Compel Arbitration. Careful Shopper moved for a transfer of venue of the New York Action, but Judge Dearie denied the motion, agreeing with TP-Link that Careful Shopper "may file counterclaims in the CDCA case." (ECF 43, pg. 2). Judge Dearie held: "Plaintiff would suffer no

1  prejudice since it can still timely pursue the claims as counterclaims in the Central
2  District of California action.  (ECF No. 44)
3    **Consideration of Anticipated Counterclaims in Case Management:**
4  Although on October 15th TP-Link encouraged Judge Dearie to deny a transfer of
5  venue because Careful Shopper could easily counterclaim herein -- and Judge Dearie
6  agreed on October 17th -- on October 24th TP-Link declined to "discuss a hypothetical
7  counterclaim that has not been filed."  Defendants believe such anticipated claims
8  should be woven into the case management plan.  At the conference, Defendants
9  would like to discuss all available means to move this case forward as expeditiously
10  as possible.
11  **B.   Legal Issues**
12    <u>Plaintiff</u>: Plaintiff brings this action for: (1) violations of the Lanham Act, 15
13  U.S.C. § 1051, *et seq.*; (2) violations of California Business & Professions Code §
14  17200 *et seq.*; (3) common law injury to business reputation; (4) unfair competition;
15  (5) trademark infringement; and (6) unjust enrichment, based on Defendants'
16  unauthorized marketing and sales of TP-Link's networking products.
17    <u>Defendants</u>:
18    **Regarding TP-Link's Existing Complaint:**  Defendants deny liability as to
19  all of the claims asserted and maintain that the legal issues include whether: (1) New
20  York law precludes TP-Link's purported warranty disclaimer; (2) a trademark
21  infringement action can be predicated on voided warranties alone in the Ninth
22  Circuit; (3) TP-Link has plead its Lanham Act claims, grounded in fraud, with
23  sufficient particularity; (4) TP-Link can demonstrate irreparable harm; and (5) Mrs.
24  Starke is a proper party defendant and whether her joinder raises an issue of bad
25  faith.
26    **Regarding Careful Shopper's Anticipated Counterclaim and Third-Party**
27  **Complaint**:  Defendants will file a counterclaim against TP-Link USA and a third-
28  party complaint against both TP-Link North America, Inc. and Auction Brothers, Inc.,

dba Amazzia ("Amazzia"), the online monitor that TP-Link engaged to eliminate CSC from the Amazon marketplace, regarding whether they libeled CSC to Amazon and whether TP-Link and Amazzia interfered with CSC's existing and prospective economic relations with Amazon. Defendants will file a Motion to Dismiss TP-Link's trademark infringement and related claims because (1) the TP-Link products offered by CSC were not "materially different" from those offered by TP-Link as a matter of law, and (2) TP-Link has failed to plead its fraud-based claims with sufficient particularity. See below at "Motions . . . Defendants."

**C.   Damages**

Plaintiff: Based on Defendants' submissions, its annual sales were over $1.3 million, in part, gained by the unauthorized sales of goods bearing the TP-LINK® Marks. Discovery has not yet commenced and therefore Plaintiff cannot provide a realistic range of provable damages at this time.

Defendants: Defendants assert that, since they have not engaged in any unlawful conduct, Plaintiff is not entitled to any damages. CSC's damages equal its lost profits by reason of being expelled from the Amazon Marketplace. CSC's CPA estimates, upon conservative assumptions, that over a 10-year period from CSC's Amazon expulsion, CSC would have earned net profits of $4.265 million.

**D.   Insurance**

Defendants are in the process of seeking a final determination from their insurer as to whether some or all of the asserted claims are covered by insurance.

**E.   Motions**

Plaintiff: TP-Link does not anticipate filing any motions seeking to add other parties or to amend the pleadings; however, it reserves the right to do so. TP-Link may need to file motions to compel discovery and other motions related to discovery, as well as a motion for summary judgment. Defendants filed a Motion to Dismiss, or, in the Alternative, Transfer or Stay pursuant to the first-to-file rule, or, alternatively, Rule 13(a) of the Federal Rules of Civil Procedure, which is fully

1  briefed.  In light of the EDNY decision, Defendants' Motion to Dismiss should be
2  denied as moot.  Defendants suggest that they intend to file another motion under
3  Rule 12 to raise defenses that could have been raised in the pending motion to
4  dismiss.  Plaintiff will meet-and-confer with Defendants pursuant to Local Rule 7,
5  and may oppose.

6  If Defendants file any counterclaims, Plaintiff may file a motion to dismiss.
7  Citing Rule 12(g)(2), Defendants claim, *infra* at footnote 3, that the pendency of
8  *Plaintiff's complaint* since May somehow forecloses a Rule 12(b)(6) motion as to
9  any *counterclaim* filed in the future. Rule 12(g)(2) does no such thing.

10 Defendants:  Careful Shopper's Motion to Dismiss or Transfer this matter is
11 moot and may be deemed withdrawn. Careful Shopper is prepared to immediately
12 file an answer, counterclaims and a third-party complaint against both new-party
13 defendants, to wit: TP-Link North America, Inc. and Amazzia, the online monitor
14 that TP-Link engaged to eliminate CSC from the Amazon marketplace.  Amazzia,
15 which actually executed critical aspects of TP-Link's illicit agenda, is currently a
16 defendant in a case similar to this one in the Southern District of New York and,
17 therefore, "up to speed."

18 CSC will seek to dismiss TP-Link's trademark infringement and related claims
19 under Civil Rule 12(b)(6), *inter alia,* premised upon the propositions that TP-Link has
20 insufficiently pled (1) that, factually, purchasers in so-called  "unauthorized sales" of
21 genuine TP-Link products on Amazon do not enjoy TP-Link's new product warranty,
22 and (2) that, as a matter of law, the absence of such warranty is insufficient as the
23 predicate of a trademark infringement claim in the Ninth Circuit, and (3) that, as a
24 matter of law, any attempt to limit new product warranty coverage as to Careful
25 Shopper's sales in New York was void under NYGBL §369-b.  As against Sora
26 Starke, there are no specific allegations of her involvement in the events at suit, let
27 alone that she was "a moving, active[,] conscious force [behind the defendant
28 corporation's alleged] infringement." *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp.

3d 359, 367 (S.D.N.Y. 2014). TP-Link's "information and belief" does not raise the propriety of a key allegation to the plausible under *Twombly* et al. *See Menzel v. Scholastic, Inc.,* No. 17-cv-05499-EMC, 2018 U.S. Dist. LEXIS 44833, at *5 (N.D. Cal. Mar. 19, 2018). In addition, the Complaint is significantly grounded in fraud but contains no specifics as to fraudulent conduct. *See* Complt., ¶¶ 36,50,58 In *Oakley, Inc. v. Donofrio*, No. SACV 12-02191-CJC(RNBx), 2013 U.S. Dist. LEXIS 198264, at *37-39 (C.D. Cal. June 14, 2013) the District Court dismissed Lanham Act and associated claims grounded in fraud where the Rule 9(b) standard was not met. Defendants' counsel has formally demanded Mrs. Starke's dismissal, but TP-Link has refused.

**F.    Complexity**

The Parties agree that this case does not require utilization of the Manual for Complex Litigation.

**G.    Status of Discovery**

Plaintiff: The Parties should proceed with discovery based on the claims in the operative complaint, and any dispute with respect to the scope or propriety of specific discovery requests should be directed to the Magistrate Judge.

Defendants: CSC agrees in principle with TP-Link that discovery should commence forthwith following the Case Management Conference. CSC commits to join Amazzia as soon as possible and share all discovery with Amazzia once joined. TP-Link seeks to move forward with discovery on its operative complaint while filing a Rule 12(b)(6) Motion as to CSC's counterclaims. Although this District will not bar TP-Link from filing its 12(b)(6) Motion, *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 161090 (C.D. Cal. Sep. 13, 2011), recent Ninth Circuit authority suggests, that both parties ought to be permitted to move forward with discovery notwithstanding the

pendency of Rule 12(b)(6) Motions. *Pepper v. Apple Inc.*, 846 F.3d 313, 318-19 (9th Cir. 2017).[3]

**H.     Discovery Plan**

    1.  Initial Disclosures

The Parties exchanged initial disclosures in May 2019.

    2.  Phasing, Timing, and Subjects of Discovery

Plaintiff: Plaintiff will seek discovery into Defendants' purchase and resale of all its products and advertising and promotion thereof, as well as the business operations of Careful Shopper. All discovery should be completed by June 30, 2020. Discovery need not be conducted in phases.

Defendants: Related to Plaintiff's complaint, Defendants will seek discovery regarding the conveyance and disclaimer of the manufacturer's warranty, Plaintiff's efforts to restrict the sale of grey market products prior to March 31, 2018, instances of consumer confusion or other alleged derogation of the trademark, any alleged conduct by Defendants aside from stocking and selling the products at issue, agreements between Amazon and Plaintiff, purported harm suffered by Plaintiff as a result of Defendants' conduct, and Plaintiffs' conduct in the marketplace regarding third-party purchases.

Related to anticipated counterclaims and crossclaims, CSC anticipates discovery into TP-Link's conduct in purchasing products from CSC, planning and executing a plan and conspiracy to eliminate competition from "unauthorized" sellers, engagement of Amazzia, Amazzia's conduct in executing its plan to eliminate third-party Amazon sellers, aggravating factors vis-à-vis the foregoing, e.g. TP-Link and Amazzia's refusal to communicate with targeted third-party sellers, false assertions to Amazon that test purchases had been made and found to be counterfeit, and the

---

[3] The subject allegations have been pending since May 22, 2019 and TP-Link has therefore already had a discovery-free period within which to move under Rule 12(b)(6). Civil Rule 1 is related to Civil Rule 12(g)(2) so as to fully consider the speed with which litigation proceeds. *See Pepper v. Apple Inc., infra.*

attendant financial incentives. Discovery of Amazon itself will be important in ascertaining exactly what TP-Link and Amazzia said to their privy, Amazon, Amazon's policies in addressing claims of counterfeiting, and other facets of the Amazon-TP-Link relationship.

### 3. Form of Discovery; Protective Order

Counsel have complied with their obligations in respect to the preservation of discoverable information, including electronically stored information ("ESI"). The parties agree that discovery should be produced in the form required by the Federal Rules of Civil Procedure. The Parties will negotiate and agree upon a protective order and ESI protocol.

### 4. Claims of Privilege; Inadvertent Production of Privileged Materials.

Any materials withheld from discovery on the grounds of privilege will be set forth in a privilege log that expressly asserts the claim of privilege and describes the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will allow other Parties or, if necessary, the Court, to assess the claim of privilege. Privileged information inadvertently produced will, upon the request of the party making inadvertent production, be promptly returned, sequestered, or destroyed, including any copies made by the party to which inadvertent disclosure was made. The party to whom inadvertent disclosure was made shall: (1) not use or disclose the information until the claim of privilege/inadvertent production is resolved; (2) take reasonable steps to retrieve the information if the party disclosed it before being notified; and (3) promptly present the information to the court under seal for a determination of any dispute concerning the claim of privilege.

### 5. Limitations on Discovery

No limitations on discovery beyond those imposed by the Federal Rules of Civil Procedure or the Court's Local Rules appear to be required at this time. Following the Parties' Federal Rule of Civil Procedure 26(a) disclosures, counsel

for the Parties shall meet and confer about whether the number of witnesses or the number or complexity of the issues in this case requires a number of depositions in excess of those allowed under Federal Rule of Civil Procedure 30.

## I. Expert Discovery

The Parties agree that expert disclosures and discovery should occur after the close of fact discovery. The Parties' proposed timing is set forth in **Exhibit A**.

## J. Dispositive Motions

Plaintiff: Plaintiff contemplates filing a motion for summary judgment or partial summary judgment on all or some of the claims asserted in the Complaint. The Parties' proposed timing is set forth in **Exhibit A**.

Defendants: Defendants contemplate filing a motion to dismiss, discussed above, and / or a motion for summary judgment.

## K. Alternative Dispute Resolution ("ADR") Procedure Selection

The Parties agree to ADR Procedure No. 2 (Court Mediation Panel).

## L. Settlement Efforts

Plaintiff: The Parties have engaged in limited settlement discussions thus far, but have not reached a resolution. Both Parties are open to settlement, and will continue to engage in such discussions.

Defendants: Defendants made a settlement demand in June 2018 but the Parties were unable to resolve the matter and that time and have not engaged in any further settlement discussions. Defendants are open to settlement and willing to engage in meaningful settlement discussions.

## M. Preliminary Trial Estimate

The Parties anticipate a four to five-day jury trial. Plaintiff expects to call five witnesses. Defendants expect to call five to seven witnesses.

## N. Trial Counsel

Plaintiff: Heather Auyang, Joe Tuffaha, and Prashanth Chennakesavan, and Tiffany Elias.

1   <u>Defendants</u>: James C. Shah and Mark Schlachet.

2   **O.    Independent Expert or Master**

3   The Parties do not anticipate requiring a master or independent scientific expert.

5   **P.    Other Issues**

6   The Parties are not aware of any additional issues affecting the status or management of this case at this time.

| **LTL ATTORNEYS LLP** | **LAW OFFICE OF MARK SCHLACHET** |
|---|---|
| By:  */s/ Heather F. Auyang*<br>Heather F. Auyang (SBN 191776)<br>Prashanth Chennakesavan (SBN 284022)<br>300 S Grand Ave, 14th Floor<br>Los Angeles, CA 90071<br>Phone: (213) 612-8900<br>Fax: (213) 612-3773<br>Email:<br>heather.auyang@ltlattorneys.com<br>prashanth.chennakesavan@ltlattorneys.com<br><br>*Attorneys for Plaintiff TP-Link USA Corporation* | By:  */s/ Mark Schlachet*<br>Mark Schlachet (*admitted PHV*)<br>3515 Severn Road<br>Cleveland, Ohio 44118<br>Telephone: (216) 225-7559<br>Facsimile: (216) 932-5390<br>markschlachet@me.com<br><br>*Attorney for Defendants Careful Shopper, LLC, Adam Starke and Sora Starke*<br><br>**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**<br><br>By:  */s/ James C. Shah*<br>James C. Shah (SBN 260435)<br>Kolin C. Tang (SBN 279834)<br>1401 Dove Street, Suite 540<br>Newport Beach, CA 92660<br>Telephone: (323) 510-4060<br>Facsimile: (866) 300-7367<br>Email:  jshah@sfmslaw.com<br>          ktang@sfmslaw.com |

*Local Counsel for Defendants Careful Shopper, LLC, Adam Starke and Sora Starke*

### ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)(i)

I, Heather F. Auyang, am the ECF User whose identification and password are being used to file the **PARTIES' JOINT RULE 26(f) REPORT**. In compliance with Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all signatories have concurred in this filing.

Dated: November 1, 2019

By: */s/ Heather F. Auyang*