1  James C. Shah (SBN 260435)
2  **SHEPHERD, FINKELMAN, MILLER**
   **& SHAH, LLP**
3  1845 Walnut Street, Ste. 806
   Philadelphia, PA  19103
4  jshah@sfmslaw.com
5
6  *Attorneys for Defendants and Third-Party Plaintiffs,*
   *Careful Shopper, LLC, Adam Starke and Sora Starke*
7  *Additional Counsel Listed In Signature Block*
8
9            **IN THE UNITED STATES DISTRICT COURT**
10          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11
   TP-LINK USA CORPORATION,              CASE NO:  8:19-cv-00082-JLS-KES
12                      Plaintiff,
13          v.
14  ADAM & SORA STARKE,                   **DEFENDANTS, DEFENDANT-**
                                          **COUNTERCLAIMANT AND**
15                      Defendants,       **THIRD-PARTY PLAINTIFF'S**
            and                           **ANSWER TO THE COMPLAINT**
16  CAREFUL SHOPPER, LLC, *et al.*        **COUNTERCLAIMS AND THIRD-**
                                          **PARTY COMPLAINT**
17  Defendant-Counterclaimant-
    Third-Party Plaintiff,
18                                        **DEMAND FOR JURY TRIAL**
19          v.
20  TP-LINK NORTH AMERICA INC,
21          and
22  AUCTION BROTHERS, INC.
    dba AMAZZIA,
23              Third-Party Defendants.
24
25
26
27
28

Defendants, Adam Starke and Sora Starke, and Defendant-Counterclaimant and Third-Party Plaintiff, Careful Shopper, LLC ("Careful Shopper" or "CSC") (collectively, "Answering Defendants"), answer, counterclaim and third-party claim, on their own knowledge as to matters personally known to them and otherwise on information and belief, as follows:

## ANSWER

1.      Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, and on that basis deny the allegations of paragraph 1 of the Complaint.

2.      Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint, and on that basis deny the allegations of paragraph 2 of the Complaint.

3.      Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint, and on that basis deny the allegations of paragraph 3 of the Complaint.

4.      The allegations of Paragraph 4 of the Complaint are a statement of law not requiring a response.

5.      The allegations of Paragraph 5 of the Complaint are a statement of law not requiring a response.

6.      The allegations of Paragraph 6 of the Complaint are a statement of law not requiring a response.  Defendants specifically deny receiving a notice of infringement from Amazon in March 2018; rather, CSC received notice of Plaintiff, TP-Link USA Corporation's ("Plaintiff" or "TP-Link")'s Complaint to Amazon, falsely alleging that CSC was selling counterfeit TP-Link products.

7.      The allegations of Paragraph 7 of the Complaint are a statement of law not requiring a response.

8.      The allegations of Paragraph 8 of the Complaint are a statement of law not requiring a response.  Answering Defendants specifically deny committing a tort in California or anywhere.  Further, Answering Defendants are not contesting this Court's personal jurisdiction.

9.      The allegations of Paragraph 9 of the Complaint are a statement of law not requiring a response.  Answering Defendants specifically deny committing wrongful acts in this district or any district.  Further, Answering Defendants are not contesting the propriety of venue in this district.

10.     Answering Defendants admit the allegations of Paragraph 10 of the Complaint.

11.     Answering Defendants admit that, at relevant times, Careful Shopper was registered as a New York LLC, with its principal place of business in Brooklyn, New York.

12.     Answering Defendants admit that Adam Starke is the owner and managing member of Careful Shopper, but deny the remainder of Paragraph 12's allegations.

13.     Answering Defendants deny that Sora Starke is a member of Careful Shopper, deny that she resides in Brooklyn, New York, and deny that she actively participated in the business activities of Careful Shopper, whether advertising, listing or the sale of at-issue products bearing the TP-Link marks.

14.     Answering Defendants deny selling infringing products in California or elsewhere.

15.     Paragraph 15 requires no response.

16.     Paragraph 16 requires no response.

17.     The allegations of Paragraph 17 of the Complaint are a statement of law not requiring a response.

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

18.    Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint, and on that basis deny the allegations of Paragraph 18 of the Complaint.

19.    Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint, and on that basis deny the allegations of Paragraph 19 of the Complaint.

20.    Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and on that basis deny the allegations of Paragraph 20 of the Complaint.

21.    Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint, and on that basis deny the allegations of Paragraph 21 of the Complaint.

22.    Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint, and on that basis deny the allegations of Paragraph 22 of the Complaint.

23.    Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint, and on that basis deny the allegations of Paragraph 23 of the Complaint.

24.    Answering Defendants lack knowledge or belief sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint, and on that basis deny the allegations of paragraph 24 of the Complaint.

25.    Answering Defendants admit that TP-Link has sold many millions of dollars of goods bearing a TP-Link trademark and that the good will associated with such mark(s) is a valuable asset.

26.    Answering Defendants do not know what Plaintiff means by "a considerable amount of money' and, hence, cannot respond to the allegations of Paragraph 26 of the Complaint and deny the same for that reason.

27.     Answering Defendants admit that, from December 2016 through April 9, 2018 at the latest, CSC listed TP-Link products under its arrangement with Amazon.  Further, Answering Defendants deny listing or selling any TP-Link products after April 9, 2018 at the latest.

28.     Answering Defendants deny the allegations of Paragraph 28 of the Complaint except as and to the extent expressly admitted herein.  CSC was not an "unauthorized seller" except in the sense that it was not specifically authorized under any distributorship agreement (or similar agreement) by TP-Link to purchase TP-Link products directly from TP-Link and thereafter sell such products.  In all other respects, CSC was "authorized" by law to sell genuine TP-Link products. CSC admits to having aggregate sales exceeding $1.5 million in 2017, of which approximately $5,000 represented the revenue from sales of TP-Link products. Answering Defendants deny that CSC sales of TP-Link products on Amazon did not convey the manufacturer's warranty, deny that such products were materially different than other genuine TP-Link products, and deny that their listing and selling of such products was "unauthorized."  Affirmatively, Answering Defendants state that, under the First Sale Doctrine, CSC was fully within its rights in lawfully acquiring TP-Link products from authorized sellers, as it did in all instances of purchase of TP-link products, and listing and selling such products on Amazon.

29.     Answering Defendants admit that from December 2017 through April 2018, CSC listed and sold approximately 200 TP-Link products having an average retail price of about $30.

30.     Answering Defendants deny each and every allegation, all conclusory, in Paragraph 30 of the Complaint.

31.     Answering Defendants deny each and every allegation, all conclusory, in Paragraph 31 of the Complaint.  Affirmatively, Answering Defendants state that under the First Sale Doctrine, CSC was fully within its rights in lawfully acquiring

4

TP-Link products from authorized sellers, as it did in all instances of purchase of TP-link products, and listing and selling such products on Amazon.

32.     Answering Defendants deny each and every allegation, all conclusory, in Paragraph 32 of the Complaint.  Affirmatively, Answering Defendants state that under the First Sale Doctrine, CSC was fully within its rights in lawfully acquiring TP-Link products from authorized sellers, as it did in all instances of purchase of TP-link products at suit, and listing an selling such products on Amazon.

33.     Answering Defendants deny each and every allegation, all conclusory, in Paragraph 33 of the Complaint.  Affirmatively, Answering Defendants state that under the First Sale Doctrine, CSC was fully within its rights in lawfully acquiring TP-Link product s from authorized sellers, as it did in all instances of purchase of TP-link products at suit, and listing an selling such products on Amazon.

34.     Answering Defendants deny each and every allegation, all conclusory, in Paragraph 34 of the Complaint.  Affirmatively, Answering Defendants state that under the First Sale Doctrine, CSC was fully within its rights in lawfully acquiring TP-Link products from authorized sellers, as it did in all instances of purchase of TP-link products at suit, and listing and selling such products on Amazon.

35.     Answering Defendants deny each and every allegation, all conclusory, in Paragraph 35 of the Complaint.  Affirmatively, Answering Defendants state that under the First Sale Doctrine CSC was fully within its rights in lawfully acquiring TP-Link product s from authorized sellers, as it did in all instances of purchase of TP-link products at suit, and listing and selling such products on Amazon.

36.     Answering Defendants deny each and every allegation, all conclusory, in Paragraph 36 of the Complaint.  Affirmatively, CSC and the Starke Defendants state that under the First Sale Doctrine, CSC was fully within its rights in lawfully acquiring TP-Link products from authorized sellers, as it did in all instances of

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

purchase of TP-link products at suit, and listing an selling such products on Amazon.

37.    Answering Defendants deny each and every allegation in Paragraph 37 of the Complaint.  Further answering, Answering Defendants state that Amazon gave notice that TP-Link had complained to it of CSC's sales of TP-Link products as being counterfeit, and not merely infringing a trademark.

38.    Answering Defendants admit that CSC sent a letter to David Zapolsky as one of many efforts to save the Careful Shopper from ruin, but deny CSC's sales were unauthorized, in violation of TP-Link's rights, or over a three-year period (it was about 16 months).

39.    Answering Defendants deny each and every allegation, all conclusory, in Paragraph 39 of the Complaint.

40.     The allegations of Paragraph 40 of the Complaint are a statement of law not requiring a response.

### **FIRST CAUSE OF ACTION**
**(Violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*.)**

41.    Answering Defendants repeat and reallege the allegations set forth in paragraphs 1-40 of this Answer as if fully set forth herein.

42.    Answering Defendants deny the allegations of Paragraph 42 of the Complaint.

43.    Answering Defendants deny the allegations of Paragraph 43 of the Complaint.

44.    Answering Defendants deny the allegations of Paragraph 44 of the Complaint.

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

45.     Answering Defendants deny the allegations of Paragraph 45 of the Complaint.  Answering Defendants further answer that, there have been no ongoing acts vis-à-vis CSC listing or selling TP-Link products since April 2018.

46.     Answering Defendants deny the allegations of Paragraph 46 of the Complaint.

47.     Answering Defendants deny the allegations of Paragraph 47 of the Complaint.

48.     Answering Defendants deny the allegations of Paragraph 48 of the Complaint.

## SECOND CAUSE OF ACTION
### (Unfair Competition, 15 U.S.C. § 1125(a))

49.     Answering Defendants repeat and reallege the allegations set forth in Paragraphs 1-48 of this Answer as if fully set forth herein.

50.     Answering Defendants deny the allegations of Paragraph 50 of the Complaint.

51.     Answering Defendants deny the allegations of Paragraph 51 of the Complaint.

52.     Answering Defendants deny the allegations of Paragraph 52 of the Complaint.

53.     Answering Defendants deny the allegations of Paragraph 53 of the Complaint.  Answering Defendants further answer that there have been no ongoing acts vis-à-vis CSC listing or selling TP-Link products since April 2018.

54.     Answering Defendants deny the allegations of Paragraph 54 of the Complaint.

## THIRD CAUSE OF ACTION
### (Unfair Competition, Cal. Bus. Prof. Code §17200 *et seq.*)

55.     Answering Defendants repeat and reallege the allegations set forth in Paragraphs 1-54 of this Answer as if fully set forth herein.

56.     Answering Defendants deny the allegations of Paragraph 56 of the Complaint.

57.     Answering Defendants deny the allegations of Paragraph 57 of the Complaint.

58.     Answering Defendants deny the allegations of Paragraph 58 of the Complaint.

59.     Answering Defendants deny the allegations of Paragraph 59 of the Complaint. Answering Defendants further answer that there have been no ongoing acts vis-à-vis CSC listing or selling TP-Link products since April 2018, when CSC was permanently expelled from the Amazon Marketplace.

60.     Answering Defendants deny the allegations of Paragraph 60 of the Complaint.

## FOURTH CAUSE OF ACTION
### (Common Law Injury to Business Reputation)

61.     Answering Defendants repeat and reallege the allegations set forth in Paragraphs 1-60 of this Answer as if fully set forth herein.

62.     Answering Defendants deny the allegations of Paragraph 61 of the Complaint.

63.     Answering Defendants deny the allegations of Paragraph 62 of the Complaint.  Answering Defendants further answer that there have been no ongoing acts vis-à-vis CSC listing or selling TP-Link products since April 2018.

## FIFTH CAUSE OF ACTION
### (Common Law Unfair Competition)

64.     Answering Defendants repeat and reallege the allegations set forth in Paragraphs 1-63 of this Answer as if fully set forth herein.

65.     Answering Defendants deny the allegations of Paragraph 65 of the Complaint.

66.     Answering Defendants deny the allegations of paragraph 66 of the Complaint.  Answering Defendants further answer that there have been no ongoing acts vis-à-vis CSC listing or selling TP-Link products since April 2018.

### SIXTH CAUSE OF ACTION
### (Common Law Trademark Infringement)

67.     Answering Defendants repeat and reallege the allegations set forth in Paragraphs 1-66 of this Answer as if fully set forth herein.

68.     Answering Defendants deny the allegations of Paragraph 68 of the Complaint.

69.     Answering Defendants deny the allegations of Paragraph 69 of the Complaint.

70.     Answering Defendants deny the allegations of paragraph 66 of the complaint.  Answering Defendants further answer that there have been no ongoing acts vis-à-vis CSC listing or selling TP-Link products since April 2018.

### SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

71.     Answering Defendants repeat and reallege the allegations set forth in paragraphs 1-70 of this answer as if fully set forth herein.

72.     Answering Defendants deny the allegations of paragraph 72 of the Complaint.

73.     Answering Defendants deny the allegations of Paragraph 73 of the Complaint.

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

74.     Answering Defendants need not answer Paragraph 73 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(No Sales of Infringing Product)**

75.     Answering Defendants have not sold any infringing or counterfeit product.

### SECOND AFFIRMATIVE DEFENSE
**(No Public Deception)**

76.     Answering Defendants have not engaged in deceptive acts or practices in the conduct of a business trade or commerce that is likely to damage the public.

### THIRD AFFIRMATIVE DEFENSE
**(No Material Difference)**

77.     If Answering Defendants are liable in any manner for sales complained of herein, which they deny, such goods were not materially different from Plaintiff's genuine products.

### FOURTH AFFIRMATIVE DEFENSE
**(Failure to State a Claim by Reason of NYSGL §349-b)**

78.     Sales by CSC were all subject to Section 349-b of New York's General Business Law, invalidating any purported disclaimer of new product warranty based upon seller's identity as an "authorized seller."

### FIFTH AFFIRMATIVE DEFENSE
**(Fault of Distributors)**

79.     The actions complained of are the fault of the Plaintiff authorizing its

distributors and licensees to make sales.

## SIXTH AFFIRMATIVE DEFENSE
### (Lack of Knowledge)

80.   Answering Defendants' actions as alleged herein are without knowledge that any activity, if proved, resulted in any unlawful activity alleged.

## SEVENTH AFFIRMATIVE DEFENSE
### (Without Knowledge of Infringement)

81.   Answering Defendants' actions as alleged herein are without knowledge that any activity alleged, if proved, infringed any of Plaintiff's marks.

## EIGHTH AFFIRMATIVE DEFENSE
### (Genuine Goods)

82.   Any goods complained of sold by the Answering Defendant are genuine.

## NINTH AFFIRMATIVE DEFENSE
### (Additional Defenses and Claims)

83.   Defendant reserves its right to amend the answer to add additional defenses and assert further counterclaims, should the facts pointing to the viability of such action arise during the course of these proceedings.

## TENTH AFFIRMATIVE DEFENSE
### (Laches)

84.   Answering Defendants allege, without admitting any liability or obligation, if any, and without impairing the general denials herein, that Plaintiff, by its conduct, is guilty of unclean hands, which bars and reduces the recovery, if any, to which Plaintiff is entitled, in accordance with proof at the time of trial.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Failure to Notify)

85.   Answering Defendants allege, without admitting any liability or obligation, if any, without impairing the general denials herein, that the Answering Defendant are informed and believe and thereon alleges that Plaintiff failed to timely notify the answering Defendant of such condition and further failed to give the answering Defendant timely opportunity to cure such condition, and therefore, Plaintiff is barred and precluded from any recovery against this answering Defendant.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Damages)

86.   Answering Defendants deny that Plaintiff sustained any damage or loss by reason of any act or omission on the part of Answering Defendant.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (First Sale and Fair Use Doctrines)

87.   Plaintiff is barred from maintaining or recovering on any of the purported claims alleged in the Complaint on the grounds that Answering Defendants' conduct at all times was non-infringing under the fair use and first sale doctrines.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Acquiescence and Estoppel)

88.   The Complaint is barred by the doctrine of acquiescence and estoppel.

**WHEREFORE,** Answering Defendants pray that Plaintiff's Complaint be dismissed and that judgment be entered in favor or all three Answering Defendants,

against Plaintiff, and that Answering Defendants and each of them have such other and further relief as to the Court shall appear just and appropriate.[1]

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

89.     Defendant-Counterclaimant and Third-Party Plaintiff, CSC, was, at relevant times, a third-party seller on Amazon, which means that it was a downstream purchaser that often listed and sold goods bearing the trademarks and other intellectual properties of manufacturers and other holders of intellectual property rights.  Such sales were absolutely lawful under the "First Sale" and "Fair Use" doctrines . . . and expressly permitted by Amazon, so long as the goods sold and delivered are authentic and the intellectual properties are not misused.[2]

90.     CSC was located in Brooklyn, New York, and first brought the instant at-suit allegations on May 22, 2018 in the United States District Court for the Eastern District of New York (the "New York Action")[3] following its commercial and financial ruination resulting from Plaintiff's tortious interference with CSC's existing and prospective business relationship with Amazon Services LLC and, through Amazon, the world of ecommerce reachable through amazon.com.

91.     The New York Action was dismissed for want of personal jurisdiction on September 30, 2019, and CSC's request for transfer of venue to this Court was denied on October 17, 2019.

92.     Plaintiff TP-Link USA Corporation ("TPU") and/or Third-Party Defendants TP-Link North America, Inc. ("TPN") and Auction Brothers, Inc. dba

---

[1] Defendant, Sora Starke, in particular, anticipates filing an appropriate motion for sanctions following success on the merits, predicated upon the abusive filing of Plaintiff's Complaint against her, as she was not involved with the matters at suit or with CSC generally.

[2] *See* "We Do Not Enforce" at https://www.amazon.com/gp/help/reports/infringement.

[3] *Careful Shopper, LLC v. TP-Link USA Corp., et al.*, Case No. 1:18-cv-03019-RJD-RM (E.D.N.Y.),

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

Amazzia ("Amazzia"), published written complaints to Amazon, libelous per se, charging CSC with three (3) instances of infringing TPC's intellectual property by *listing* (not *selling*) counterfeit goods for sale on amazon.com ("IP Complaints"). Said IP Complaints directly caused CSC's permanent expulsion as a seller on the Amazon website.

93.     Third-Party Defendant Amazzia is engaged in the business of "Amazon brand protection." Amazzia is a fictitious business name of Auction Brothers, Inc., duly registered in the Office of the Los Angeles County Registrar-Recorder on October 10, 2017 as Document No. 2017293058. All of Amazzia's actions hereinafter alleged were done at the direction and authority, directly or indirectly, of Mikhail Fikhman ("Fikhman"), individually and/or as CEO of Auction Brothers, Inc. Fikhman may yet be joined herein as a defendant.

94.     TP-Link retained Amazzia to monitor specific TP-Link products on the Amazon marketplace and do a "third-party seller clean up" of those selling TP-Link products outside TP-Link's authorized distribution channels.

95.     Amazzia describes itself as follows:

> As your dedicated partner, we keep your brand safe from unauthorized agents, ensure Amazon compliant distribution and amazing growth through price protection, optimization and targeted marketing.
>
> . . . .
>
> *Removing Un-Authorized Sellers*
>
> Effective and proven strategies to report and remove Un-Authorized Resellers from your listings

96.     Amazzia's primary focus is removing lawful Amazon offerings from the Marketplace:

> Unauthorized resellers corrupt the online marketplace with reckless, self-serving tactics, causing price erosion and negatively impacting your brand's image.
>
> Under these circumstances your legitimate brick & mortar retailers are unable to compete with online prices and may refuse to carry your brand.

97.    Amazzia's Vice-President of Brand Protection William Samuel articulates his role quite simply:[4]

> As the Vice President of Brand Protection at Amazzia, I ensure the protection of my clients' brands by identifying and eliminating unauthorized Amazon sellers. **The increasing number of MAP violators in the Amazon marketplace is astounding**! Rogue marketplace sellers can damage your brand and undercut your bottom line by selling products at extremely low discounted rates.  (emphasis added)

98.    Amazzia makes clear in publicly available promotions that the real problem with third-party sellers is that that they may *try* to compete on price:

> Not all third-party sellers are ethical, and some may try to undercut you and misrepresent your brand. **The main risk involves companies deviating from your minimum advertised price.** This results in having your brand's value lowered. There's also the risk of bad brand representation if consumers experience poor customer service with any unauthorized third-party sellers. As a result, customers associate those bad experiences with your brand.
>
> ***
>
> **Amazzia can protect your brand by preventing MAP violations** . . . (emphasis added)

99.    Amazzia entered into a TP-Link-Amazon Brand Protection Agreement under which (i) Amazzia committed to TP-Link to conduct an "Amazon cleanup," (ii) TP-Link provided Amazzia with specific ASIN's to be watched, (iii) Amazzia promised to "report non-compliant sellers to Amazon until they are removed by Amazon" (iv) Amazzia's commitment was to rid the Marketplace of "resellers" as follows: "50% .of resellers to be removed in 60 days, 75% in 90 days, and 90% in 120 days," and (v) Amazzia promised TP-Link "full access to our team for any questions regarding the cleanup project."

---

[4] *See* https://www.linkedin.com/in/william-samuel-0825a071/.

100.   Unable to eliminate CSC sales as "unauthorized" or "discounted"—all perfectly lawful--Amazzia sent fraudulent IP complaints to Amazon charging CSC with counterfeiting, at all times acting in concert with and on behalf of TP-Link, and with the latter's actual authority, instructions, and internet domain identity.

101.   Amazzia directly caused CSC's permanent expulsion from the Amazon Marketplace.   Over a three-year period, CSC had built an Amazon platform presence from zero to approximately $1.5 million in annual sales, with supplier relationships and other goodwill that cannot be replicated.

102.   Plaintiff TPU operates as an indirect subsidiary of TP-LINK Technologies Co., Ltd. ("TPC"), a Chinese parent company.  The parent TP-Link has lately been the world's number one provider of Wi-Fi products, shipping over 320 million products around the globe during 2017-2018.

103.   TPU, an indirect subsidiary of TPC, was founded in 2008 and is based in Orange County, California.  It manufactures and supplies networking products for home and small business, known as SOHO and SMB.  Examples are switches, routers, and components for wireless systems.

104.   TPU's products are available at substantially all major electronics retailers, online and in-store, in New York and California, including amazon.com, jet.com, Best Buy, COSTCO, Home Depot, Office Depot, Sam's Club, Sears, Staples, Target, and Walmart.[5]

105.   Third-party Defendant TP-Link North America Inc. ("TPN") is a subsidiary of TPU or otherwise affiliated with TPU, and was registered as a California corporation on or about March 7, 2017.

---

[5] https://www.tp-link.com/us/where-to-buy.

16
Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

106.   TPN functions as an alter ego of TPU and its business offices are located at TPU's principal address in Brea, CA, while it handles TPU/TPN's warehousing a few miles away in Fontana, CA.

107.   TP-Link's Linkedin page lists (or listed at relevant times) at least two (2) dual positions, believed to be specifically at issue here, held under simultaneous employment by TPU and TPN:

- Director of E-commerce at TP-Link North America, Inc.
Greater Los Angeles Area
Current: Senior Channel Strategy Manager,B2B at **TP-Link USA** Corporation[6]
- ChannelStrategy Manager, Ecom at TP-Link USA Corporation
Hangzhou, Zhejiang, China
Current: Channel Strategy Manager, Ecom at **TP-Link** North America, Inc.[7]

108.   One Tom Lei (Screen name "amazon91773") ("Lei"), believed to be an employee of both TPN and TPU, operates out of TPN's warehouse facility in Fontana, CA, attempting through various means, some illegal, to kill off Amazon-related TPU competitors (that are not so-called "Authorized Resellers").

109.   Lei purchased in his own name (using TPU funding or reimbursement) TPU products from CSC on approximately 20 occasions, without disclosure of TP-Link involvement, between March and December 2017.  See Exhibit 1 attached hereto. Lei received them at TPU/TPN's Fontana CA warehouse, examined the products, and returned a number of them.  All were authentic and no claim of counterfeiting was made.  Instead, Lei, or those acting in concert with him, libeled CSC in March 2018 for *listing* counterfeit products.

---

[6] https://www.linkedin.com/company/tp-link/ at See all 78 employees on LinkedIn, Screen 1 (last visited on June 3, 2018).

[7] *Id.*  at Screen 8.

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

110.   On information and belief, Plaintiff TPU and Amazzia executed and sent Amazon a document claiming that CSC *sold* a counterfeit TPU product to or on behalf of TPU in a "test purchase."  No such test purchase of counterfeit product was ever transacted with CSC, i.e. the counterfeit accusation and supporting evidence were false.  A copy of Amazon's instructions for making a counterfeit claim is annexed as Exhibit 2.

111.   Lei has also utilized other subterfuges to harm honest resellers of TPU products vis-à-vis Amazon, including (i) buying, opening and returning multiple products to FBA, thereby artificially skyrocketing target competitors' return rate and assuring Amazon's prompt delisting and gating (precluding competition) of the victim-competitor's TPU products, and (ii) reporting falsely to Amazon, purportedly as a random consumer, that TPU/TPN had advised (upon routine inquiry to TPU for warranty registration purposes or the like) that the competitors' products were on a TPU/TPN list of stolen serial numbers.  Subsequent investigation has confirmed that TPU had no such list of stolen items by serial number.  Lei's conduct, or that of those complicit, including Amazzia, induced Amazon to delist and ban honest resellers from competing in the sale of TPU products.

112.   TPC, TPU and TPN purport to be separate corporate entities, insulated from and unrelated to the acts of each other.  In fact and law, however, the three entities are in substance a single, consolidated entity.  TPU and TPN are but mere departments of TPC, for reasons set forth at length in the New York Action and incorporated herein as though fully set forth.

## JURISDICTION AND VENUE

113.   This Court has subject matter jurisdiction over CSC's counterclaims and third-party complaint pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

114.    The alleged acts of tortious interference and other conduct directed at CSC are so related to TPU's trademark infringement and related claims answered hereinabove as to make these counterclaims mandatory in contemplation of Rule 13(a) of the Federal Rules of Civil Procedure.

115.    Amazzia and TPN are residents of this District and their challenged conduct was initiated in this District.

## FACTS

116.    TPU sells its goods on amazon.com, either in its own right or as a First-Party Seller with goods "sold and fulfilled" by Amazon.

117.    CSC was a third-party seller on Amazon, which means that CSC was a downstream purchaser that often lists and sells goods bearing the trademarks and other intellectual properties of manufacturers and other holders of intellectual property rights.  Such sales are absolutely lawful under the First Sale" and "Fair Use" doctrines and expressly permitted by Amazon, so long as the goods sold and delivered are authentic and the intellectual properties are not misused.[8]

118.    CSC and Amazon are parties to Amazon's Business Solutions Agreement, binding both parties to the terms thereof and policies adopted thereunder.  *See* https://sellercentral.amazon.com/gp/help/external/ 1791?ref=efph_1791_cont_521&language=en_US

119.    CSC bought TP-Link® branded products during December 2016-March 2018 and sold them on its storefront at amazon.com.  In fact, Plaintiff acquired and sold--over roughly two years--in the range of two hundred TP-Link

---

[8] *See* "We Do Not Enforce" at https://www.amazon.com/gp/help/reports/infringement.

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

1  items, averaging about $30 apiece at resale, out of the roughly 320 million items TP-
2  Link sold worldwide during the period,[9] i.e., roughly .000062%.

3        120.   CSC sourced each and every TPU product thus acquired from Amazon
4  directly, Fry's Electronics, Inc., B&H Photo Video, Dell and Newegg, all of which
5  are Authorized Resellers of TPU products.  CSC never sourced a TPU product
6  except as stated in this paragraph.

7        121.   Fry's, B&H Photo Video and Amazon, Dell and Newegg, as
8  Authorized Resellers of TPU's products, received their inventory of TPU products
9  directly from TPU/TPN or its authorized agent.  See n. 2, *supra*.  The products thus
10  acquired by Authorized Resellers and resold to CSC were authentic.

11        122.   CSC listed various TPU products for sale on amazon.com.

12        123.   All subject TPU products listed for sale were at all relevant times
13  physically held in Amazon's warehouse under its Fulfilled by Amazon ("FBA")
14  program, whereunder Amazon handles storage, delivery, customer complaints and
15  other logistics.  They could have been checked for authenticity at any time.

16        124.   On or about March 31, 2018 TPU/TPN reported to Amazon that
17  Defendant-CSC had *listed* two (2) counterfeit TPU Products (Exhibit 3 hereto):

18      From: "seller-evaluation@amazon.com" <seller-evaluation@amazon.com>
19      Date: March 31, 2018 at 5:11:31 PM EDT
        To: "astarke613@gmail.com" <astarke613@gmail.com>
20      Subject: Warning: Notice of Intellectual Property Rights Infringement
21      Reply-To: "seller-evaluation+C3RJUR3HFTXUDM-
        TSXRDOTBRJO2S@amazon.com" <sellerevaluation+
22      C3RJUR3HFTXUDM-TSXRDOTBRJO2S@amazon.com>

23      Hello,
24
25      We are contacting you because we received a report from a rights owner that
26
27  ───────────────
    [9] https://www.tp-link.com/gr/press/news/17669/ (The figures are no less impressive when
    examined in terms of total sales volume, which reached a staggering 161 million [in 2016]— the
28  equivalent of five products sold every second . . . total share of 45.9% for the WLAN market.").

you are listing counterfeit items. Examples of these items are listed below:

ASIN: B00PDLRHFW, TP-Link Archer AC1900 Smart WiFi Router - Dual-Band Gigabit (C9)
ASIN: B0168G0KZY, TP-Link Archer AC1200 Reliable Dual-band WiFi Router (C50)

We may let you list this content again if we receive a retraction from the rights owner. Their contact information can be found below.

TP-Link, Compliance
compliance-usa@tp-link.com

If the rights owner agrees to retract their complaint, they must send the retraction to us at notice-dispute@amazon.com.

If you believe that the reported content does not infringe the rights owner's intellectual property rights, you may email notice-dispute@ amazon.com with supporting information.

We consider allegations of intellectual property infringement a serious matter and your account is under review. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.
Complaint ID: 1574766671,1574766551

125.   Amazon has formal, mandatory procedures precedent to delisting a seller based upon authenticity complaints from an alleged owner of intellectual property.  The procedure and required attestations are published at https://www.amazon.com/gp/help/reports/infringement (Exhibit 4 hereto). TPU/TPN executed the foregoing procedure with falsity and malice.[10]

---

[10] On information and belief, TPU/TPN attested to the following per the form:

**Statements**

126.   TPU/TPN had ample opportunity and did in fact, albeit surreptitiously, test purchase many of CSC's TP-Link offerings to determine authenticity. Exhibit 1 hereto.  All were authentic and TPU has never stated to the contrary except, of course, that Amazon conditioned CSC's expulsion upon an alleged "test purchase" of counterfeit product. It chose to allege CSC's "counterfeiting operation" with no factual basis whatever and in the face of all contra-indications.  Such actions were malicious.

127.   If TPU/TPN/TPC genuinely thought CSC's listings were of counterfeit merchandise, it also had a remedy to send CSC a takedown notice under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §512.  Failure to use this remedy instead of reporting directly to Amazon bespeaks a specific intent to harm Defendant-CSC.

128.   On April 3, 2018 CSC emailed TPU/TPN/Amazzia at the Amazon-designated address, presenting documentary proof of authenticity and demanding that TPU/TPN/Amazzia retract its erroneous complaint to Amazon (Exhibit 5 hereto):

From: "A. Starke" <astarke613@gmail.com>

Subject: DEMAND FOR RETRACTION OF RIGHTS COMPLAINTS AND COMMITMENT TO CEASE SALES OF TP-LINK RESTRICTED PRODUCTS
Date: April 3, 2018 at 3=07=04 PM EDT
To: compliance-usa@tp-link.com

To whom it may concern:

---

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

1   I received the following email from Amazon:

2   [material omitted to streamline complaint.  Full document is Exhibit 5]

3

4   I am requesting THAT YOUR COMPANY RETRACT this complaint BY
SENDING THE RETRACTIONS TO NOTICEDISPUTE@AMAZON.COM.

5   These items were purchased in very small quantity from an authorized re-seller,
specifically from amazon.com and Amazon ITSELF WAS the seller. UNLESS

6   YOU IN GOOD FAITH DOUBT THE GENUINENESS OF OUR ATTACHED
DOCUMENTATION, I AM SURE YOU WILL UNDERSTAND THAT YOUR

7   RIGHTS COMPLAINT ASSERTED UNTRUE CLAIMS AGAINST

8   CAREFULSHOPPER. We have no intention and never did intend to sell your

9   product in any sort of large quantity or do anything disruptive to the sale and retail
fulfillment of your products. We only intended to purchase a small handful of

10  authentic items and sell them quickly at their suggested retail prices. We had no

11  awareness that this CONFLICTED with any of your company's policies and *we
were not forewarned by your company in the way that most companies forewarn*

12  *those whom they do not want selling their products.* I politely request that you

13  please, as soon as possible, remove this rights complaint against my company,
Carefulshopper, by contacting Amazon at the email address notice-

14  dispute@amazon.com. We know well that your products are the best in your

15  industry and we ourselves make use of your products. Going forward we would like
to know how we can become an authorized re-seller of your products. If for any

16  reason we cannot, we are prepared to stop further selling ANY of the said products

17  and others of which you deem that we are ineligible to sell. I can be reached by
phone on my cell phone at 216-905-2153 for further correspondence or via email.

18

19  Thank you for your understanding in this matter.

20

21  Sincerely,

22  Adam Starke
Owner Careful Shopper LLC

23

24  TP-Link Archer
AC1200.pdf

25  TP-Link Archer
AC1900.pdf

26

27

28

1    TPU/TPN/Amazzia did not acknowledge or respond to CSC, nor did they or

2    any of them retract their complaint.

3        129.   Prior to April 9, 2018 TPU/TPN/Amazzia again reported to Amazon,

4    falsely, that CSC was again listing counterfeit TPU Products, citing a third product.

5    Discovery will determine the exact date of this second false report of alleged

6    counterfeiting.  On information and belief TPU/TPN/Amazzia made this second

7    report with (i) knowledge of Amazon policies providing for suspension upon

8    multiple IP Complaints, and (ii) with specific intent to cause, or reckless disregard

9    in causing, CSC's expulsion from Amazon.com (Exhibit 6 hereto):

> From: "seller-evaluation@amazon.com" <seller-evaluation@amazon.com>
> Date: April 9, 2018 at 7:37:20 AM EDT
> To: "astarke613@gmail.com" <astarke613@gmail.com>
> Subject: Warning: Notice of Intellectual Property Rights Infringement
> Reply-To: "seller-evaluation+C3RJUR3HFTXUDM-
> T240AR46CIEJ1A@amazon.com" <seller-
> evaluation+C3RJUR3HFTXUDMT240AR46CIEJ1A@
> amazon.com>

> Hello,

> We are contacting you because we received a report from a rights owner that
> you are listing counterfeit items. Examples of these items are listed below:

> ASIN: B010S6SG3S, TP-Link AC1750 WiFi Range Extender with High
> Speed Mode and Intelligent Signal Indicator (RE450)

> We may let you list this content again if we receive a retraction from the
> rights owner. Their contact information can be found below.

> TP-Link, Compliance
> compliance-usa@tp-link.com

> If the rights owner agrees to retract their complaint, they must send the
> retraction to us at notice-dispute@amazon.com.

> If you believe that the reported content does not infringe the rights owner's

24

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES

intellectual property rights, you may email noticedispute@amazon.com with supporting information.

We consider allegations of intellectual property infringement a serious matter and your account is under review. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.
Complaint ID: 1594857291

130.   CSC made repeated attempts to convince Amazon of its innocence of the alleged wrongdoing, without success.  On April 23, 2018 CSC provided proof (see Amazon's Final Details for Order #111-6388017-8133815, attached as Exhibit 7) to Amazon that it had purchased the accused items from an authorized source:

From: Adam Starke
Sent: Monday, April 23, 2018 5:44:06 PM
To: noAce-dispute@amazon.com
Subject: ASIN B0168G0KZY, B00PDLRHFW, B010S6SG3S

Regarding asins: B0168G0KZY, B00PDLRHFW, B010S6SG3S

TP Link has made a claim against our goods which we sold that they were inauthentic. This claim is FALSE. All these items were purchased from amazon.com and amazon was the seller on record. We no longer intend to sell these items as we see clearly it is against the manufacturers wishes. However, regarding their claim that our items were inauthentic this is FALSE and we regard this claim as a defamation against us liable to proceedings in a court of law. Please remove the inauthentic complaints against us.

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES






131.  On April 28, 2018 Amazon emailed Defendant, acknowledging the controversy over TPU/TPN products, the following status report on CSC's appeal (Exhibit 8 hereto):

From: Amazon <notice-dispute@amazon.com>
Date: April 28, 2018 at 1:16:59 AM EDT
To: "astarke613@gmail.com" <astarke613@gmail.com>
Subject: Notice: Policy Warning
Reply-To: Amazon notice-dispute@amazon.com

Hello,

We are still reviewing your account. We will send you an email when we finish the review.
ASIN(s): B00PDLRHFW, B0168G0KZY

1    Complaint ID: 5022245921

2    Sincerely,

3

4    Seller Performance Team

5    132.    Three days later Amazon finally adjudicated CSC's appeal and, true to

6    its word ("If we receive more complaints about your listings, we may not allow you

7    to sell on Amazon.com."), permanently expelled Defendant from amazon.com on

8    May 1, 2018 (Exhibit 9 hereto):

9    From: Amazon <seller-performance@amazon.com>
     Date: May 1, 2018 at 5:56:16 AM EDT
10   To: "adam@carefulshopper.com" <adam@carefulshopper.com>
     Subject: Your Amazon.com selling privileges have been removed
11   Reply-To: Amazon <seller-performance@amazon.com>

12

13   Hello,

14
     We reviewed your account and the information you provided, and we have
15   decided that you may not sell on Amazon.com.

16
     Please ship any open orders. If you have funds in your account, they will be
17   available after any amounts paid for A-to-z claims or chargebacks on your orders
     have been deducted. You can see your balance and settlement information in the
18   Payments section of Seller Central.
19
     If you have questions about those, please write to payments-funds@amazon.
20

21   Sincerely,
     Seller Performance Team
22

23   Defendant exhausted all possible administrative options at Amazon, including

24   appellate procedures and a certified letter to Amazon's General Counsel . . . to no

25   avail.  Neither Amazon nor TPU/TPN disputed that the three ASINS cited as

26   counterfeit were, in fact, purchased from an authorized reseller.  Defendant CSC

27   was permanently expelled nonetheless.

28

133.   By reason of the expulsion CSC was unable to sell its aging inventory, access its funds in Amazon's hands, or pay its loan owing to Amazon Capital Support.  CSC suffered a Notice of Default on said loan, accrual of interest, imposition of countless fees and other burdens incidental to the purported breach of Amazon's Business Solutions Agreement and program policy.

134.   There exists no alternate, comparable platform (to Amazon) whereby a third-party seller can earn a living, as approximately one-half of all online retail sales are made on amazon.com, and the other half of online retail sales are diffused amongst millions of websites.

135.   The above cascade of adversities drove CSC to the zone of insolvency, destroying a business producing hundreds of thousands in profit per annum.

136.   TPU/TPN/Amazzia's conspiratorial actions and inactions, moreover, were willful, wanton, actually malicious and outrageous, so as to justify the imposition of punitive damages in an amount not less than $4,000,000, together with attorney fees to be determined by the Court.

## FALSE INFRINGEMENT CLAIMS AT AMAZON

137.   In an April 2018 article by Chris McCabe ("McCabe"), the renowned expert in Amazon Seller Performance issues, McCabe summarizes "[h]ow unethical sellers abuse the system with bogus IP, trademark, copyright and patent reports:"[11]

> In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The   rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable. **Unfortunately, word is**

[11] McCabe is a former Investigation Specialist for Amazon's Seller Performance team.  His article is "False Infringement Claims are Rife on Amazon," at https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/.

**out among potential Notice claim abusers that anyone can submit a form.** Amazon are not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications. They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it. What if you can't locate a party who submits a false form against you? It's up to you to chase them down and then show Amazon teams that the infringement allegations are false. There is no guarantee that you'll be successful though, as results vary.

138.   TPU/TPN/Amazzia was an unethical seller in the instant case when it falsely executed IP Complaints against CSC and, even if it issued the first complaint (3/31/18) as an honest mistake (it did not), it received absolute proof of its error on April 3, 2018 . . .  but did not retract its evil report; in fact, it issued another damning report on April 9th and thereby sealed CSC's doom.

139.   TPU/TPN/Amazzia acted maliciously and intentionally in reporting to Amazon that CSC was listing counterfeit TPU/TPN products and, if fact, TPU/TPN's second report to Amazon was made when TPU/TPN indisputably knew its report was false because CSC had submitted proof beyond any doubt that its TPU products were authentic.

## CLAIM I
## INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

140.   CSC incorporates the allegations above as though the same were re-written at length.

141.   In order to state a claim for tortious interference with prospective economic advantage, a claimant must plead facts sufficient to demonstrate that she had "(1)...business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used

29

dishonest, unfair, or improper means; and  (4) defendant's acts injured the relationship." *Catskill Development L.L.C. v Park Place Entertainment Corp.,* 547 F.3d 115, 132 (2d Cir. 2008); *see also DiFolco v. MSNBC Cable L.L.C*., 622 F.3d 104, 114 (2d Cir. 2010).  "The elements of tortious interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.*, 29 Cal. 4th at 1153.  *Fresno Motors, Ltd. Liab. Co. v. Mercedes-Benz USA, Ltd. Liab. Co.*, 852 F. Supp. 2d 1280, 1292 n.12 (E.D. Cal. 2012).

142.   As of March 31, 2018, CSC was a third-party seller on Amazon and was thriving.   CSC performance metrics were unblemished aside from TP-Link/Amazzia's evil visitation.  Exhibit 10.   Experts believe that Amazon third-party sellers who pass a threshold of <$1MM in annual sales, known as "Top Sellers" (such as CSC), have considerable longevity in their Amazon business relationship.  *See* https://www.marketplacepulse.com/articles/veteran-amazon-sellers-still-at-the-top.

143.   TPU/TPN/Amazzia's accusations of counterfeiting, made directly to Amazon, were for the improper purpose of suppressing competition; and those actions interfered with CSC's business relationship with Amazon and proximately caused CSC's expulsion.  Discovery is necessary to identify other improper purposes, if any, for the challenged conduct.

144.   TPU/TPN/Amazzia's accusations were false and TPU/TPN/Amazzia knew they were false at relevant times. TPU/TPN/Amazzia's statements were made maliciously and with ill will, as business entities do not lie about competitors absent

a strong measure of ill will.

145.   Amazon stated that it took TPU/TPN/Amazzia's accusations very seriously, threatened to terminate CSC for repeated IP Complaints and, in fact, expelled CSC as an Amazon third-party seller after receiving repeated IP Complaints.

146.   Amazon stated that it would act favorably if TPU/TPN/Amazzia would retract its accusations; but, despite being shown indisputable proof of CSC's innocence of the counterfeiting charges, TPU/TPN/Amazzia refused to retract the IP Complaints.

147.   TPU/TPN/Amazzia's acts destroyed CSC's relationship with Amazon, thereby causing the destruction of Plaintiff's business.

148.   CSC lost profits by reason of being expelled from the Amazon Marketplace.  CSC's CPA estimates, upon conservative assumptions, that over a 10-year period from CSC's Amazon expulsion, CSC would have earned net profits of $4.265 million.  See Exhibit 11 hereto.

## CLAIM II
## LIBEL PER SE

149.   CSC incorporates the allegations above as though the same were re-written at length.

150.   Under California law:

> The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259, 217 Cal. Rptr. 3d 234 (2017) (quoting *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312, 206 Cal. Rptr. 3d 60 (2016)), as modified (Apr. 19, 2017), review denied (June 28, 2017). "Libel is a form of defamation effected in writing." *John Doe 2*, 1 Cal. App. 5th at 1312. The writing must be "false and unprivileged" and "expose[] [plaintiff] to hatred, contempt, ridicule, or obloquy, or . . . cause[] him to be shunned or avoided, or . . . ha[ve] a tendency to injure

31

him in his occupation." Cal. Civ. Code § 45.' *Schmidt v. Baldy*, No. CV 16-9368-DSF (AGRx), 2019 U.S. Dist. LEXIS 182826, at *18 (C.D. Cal. Oct. 19, 2019).

151.   The elements of a cause of action for slander under New York law are (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege."  Under New York defamation law, the Courts have distinguished "a limited category of statements" that are considered "libelous *per se* which do not require pleading and proof of special damages." *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985).

152.   TPU/TPN/Amazzia's scheming accusations falsely charged CSC with a serious crime or crimes, to wit: counterfeiting, a form of fraud, undertaken by means of interstate wire services, itself a Federal felony.  18 U.S.C. §1343.

153.   TPU/TPN/Amazzia's accusations against CSC to Amazon directly injured said Defendant in its business and trade because, as TPU/TPN/Amazzia knew, Amazon will not tolerate repeated counterfeiters as Amazon sellers.

154.   TPU/TPN/Amazzia's accusations against CSC caused CSC reputational injury, e.g. absence of website offerings, reportable history to prospective employers and investors, and too many ramifications to detail.

155.   TPU/TPN/Amazzia's accusations against CSC constitute libel *per se.*

156.   Although injury may be presumed due to libel *per se,* CSC suffered above and beyond presumed damages, e.g. loss of enterprise value and income.  In particular, Careful Shopper, lost good will specific to the Careful Shopper-Amazon relationship that cannot be recovered including, *inter alia,* CSC's right to sell a broad range of products on amazon.com, much of which entitlement was

1  grandfathered.[12]

2      WHEREFORE, Defendant, Careful Shopper LLC, prays for relief as follows,

3  jointly and severally, against all defendants:

4      A.    Compensatory damages of at least $4,265,101;

5      B.    Punitive damages of not less than $4,000,000;

6      C.    Attorney fees and costs; and

7      D.    Such other and further relief as the Court may order.

8                        **JURY DEMAND**

9      Defendant CSC demands a trial by jury as to all triable issues.

10  Dated: November 12, 2019

11                              **SHEPHERD, FINKELMAN, MILLER &**
12                              **SHAH LLP**

13                              By: */s/ James C. Shah*
14                              James C. Shah (SBN 260435)
15                              1845 Walnut Street, Ste. 806
                                Philadelphia, PA 19103
16                              Telephone: (610) 891-9880
                                Facsimile: (866) 300-7367
17                              jshah@sfmslaw.com
18

19                              **LAW OFFICE OF**
                                **MARK SCHLACHET**
20                              Mark Schlachet *(admitted pro hac vice)*
21                              3515 Severn Road
                                Cleveland, Ohio 44118
22                              Telephone: (216) 225-7559
                                Facsimile: (216) 932-5390
23                              markschlachet@me.com

24

25

26

27  [12] As an established third-party seller, CSC was entitled to sell many products that a new seller
    would be precluded from selling based upon Amazon's "gating" and other restrictions.
28                                    33

1

*Attorneys for Defendants, Third-Party*
*Plaintiffs Careful Shopper, LLC, Adam J.*
*Starke and Sora Starke*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants, Defendant-Counterclaimant and Third-Party Plaintiff's Answer
8:19-cv-00082-JLS-KES