LTL ATTORNEYS LLP
Heather F. Auyang (SBN 191776)
  heather.auyang@ltlattorneys.com
Joe H. Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (SBN 284022)
  prashanth.chennakesavan@ltlattorneys.com
300 South Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel:  (213) 612-8900
Fax:  (213) 612-3773

Attorneys for Plaintiff
TP-Link USA Corporation and
Third-Party Defendant TP-Link North America, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TP-LINK USA CORPORATION,<br><br>           Plaintiff,<br><br>      v.<br><br>CAREFUL SHOPPER, LLC, ADAM STARKE, SORA STARKE, and DOES 1 through 10, inclusive,<br><br>           Defendants.<br><br>---<br><br>CAREFUL SHOPPER, LLC,<br><br>           Counterclaimant-<br>           Third-Party Plaintiff,<br><br>      v.<br><br>TP-LINK USA NORTH AMERICA INC. and AUCTION BROTHERS, INC. dba AMAZZIA,<br><br>           Third-Party Defendants. | CASE NO.: 8:19-CV-00082-JLS-KES<br><br>Hon. Josephine L. Staton<br><br>**TP-LINK'S REPLY IN SUPPORT OF THEIR MOTION TO STRIKE AND/OR DISMISS AMENDED COUNTERCLAIMS**<br><br>Cal. Code Civ. P. 425.16 and Fed. R. Civ. P. 12<br><br>Hearing Date:     March 13, 2020<br>Hearing Time:     10:30 a.m.<br>Courtroom:          10A<br><br>Complaint Filed: January 15, 2019 |

1

## **TABLE OF CONTENTS**

2   Introduction ..................................................................................................... 1

3   Argument ......................................................................................................... 2

4   I.   TP-Link's Reports to Amazon are Reasonably Related to the Subject
5        Matter of This Action ........................................................................... 2

6   II.  There Is No Bad-Faith Exception to the Protections of the Anti-Slapp
7        Statute or California's Litigation Privilege ......................................... 4

8   III. Careful Shopper Continues to Fail to Establish a Probability of Prevailing
9        on Its State Law Claims ....................................................................... 6

10       A.  Careful Shopper Relies on the Wrong Legal Standard ................... 6

11       B.  The California Litigation Privilege Applies For the Same Reason as the
12           Anti-SLAPP Statute .......................................................................... 7

13       C.  The *Noerr-Pennington* Sham Exception Does Not Apply ............ 8

14       D.  Careful Shopper's Trade Libel Claim Fails to Provide the Requisite
15           Specificity under Rule 9(b) ............................................................ 10

16       E.  The Tortious Inference Claim Fails to Allege Independent Wrongful
17           Acts ................................................................................................. 13

18   IV. TP-Link's Anti-SLAPP Motion is Timely ......................................... 14

19   V.  The Antitrust Counterclaim Fails as a Matter of Law........................ 15

20       A.  The *Per Se* Rule Does not Apply to the Alleged Restraints ......... 15

21       B.  Careful Shopper Has Not Pleaded Antitrust Injury ..................... 18

22       C.  The *Copperweld* Doctrine Applies .............................................. 20

23       D.  Careful Shopper Cannot Plead a Rule of Reason Claim............... 22

24   VI. The Court Should Deny Careful Shopper's Request for Judicial Notice .......... 23

25   Conclusion ..................................................................................................... 24

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) ...............................................5

*Am. Needle, Inc. v. Nat'l Football League*,
560 U.S. 183 (2010) ....................................................................................21

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
2013 WL 3460707 (N.D. Cal. July 9, 2013) ...............................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................20

*Barnes v. JFK Mem'l Hosp., Inc.*,
2017 WL 7240813 (C.D. Cal. Aug. 28, 2017) .............................................19

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
182 F.3d 1096 (9th Cir. 1999) .....................................................................22

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) .....................................................................17

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
485 U.S. 717 (1988) ....................................................................................16

*Carpenters Local Union 721 v. Limon*,
2018 WL 3815036 (C.D. Cal. Feb. 27, 2018) ...............................................8

*Carter v. Variflex, Inc.*,
101 F. Supp. 2d 1261 (C.D. Cal. 2000) .......................................................19

*Century Sur. Co. v. Prince*,
782 F. App'x 553 (9th Cir. 2019) ................................................................24

*Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*,
611 F.3d 495 (9th Cir. 2010) .......................................................................19

*Collins v. Allstate Indem. Co.*,
428 F. App'x 688 (9th Cir. 2011) ..................................................................5

*ComputerXpress, Inc. v. Jackson*,
93 Cal. App. 4th 993 (2001) ........................................................................11

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984).................................................................................21

*Darbeevision, Inc. v. C&A Mktg., Inc.*,
2018 WL 7500284 (C.D. Cal. Dec. 13, 2018).........................................23

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
11 Cal.4th 376 (1995) .............................................................................13

*Doe v. Gangland Prods., Inc.*,
730 F.3d 946 (9th Cir. 2013) .....................................................................5

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
2005 WL 5517731 (S.D. Cal. Aug. 9, 2005) ...........................................10

*Empress LLC v. City and Cty. of San Fran.*,
419 F.3d 1052 (9th Cir. 2005) ...................................................................9

*Fitbit, Inc. v. Laguna 2, LLC*,
2018 WL 306724 (N.D. Cal. Jan. 5, 2018).................................................3

*Flatley v. Mauro*,
39 Cal.4th 299 (2006) ................................................................................5

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004) ..................................................................13

*Gough v. Rossmoor Corp.*,
585 F.2d 381 (9th Cir. 1978) ...................................................................16

*Grant & Eisenhofer, P.A. v. Brown*,
2017 WL 6343506 (C.D. Cal. Dec. 6, 2017)..............................................7

*Hall v. Time Warner, Inc.*,
153 Cal. App. 4th 1337 (2007) ..................................................................5

*Hard2Find Accessories, Inc. v. Amazon.com, Inc.*,
691 F. App'x 406 (9th Cir. 2017) ..............................................................9

*Harman Int'l Indus. Inc. v. Pro Sounds Gear, Inc.*,
2018 WL 1989518 (C.D. Cal. Apr. 24, 2018) ...........................................4

*Hicks v. Evans*,
2012 WL 398821 (N.D. Cal. Feb. 7, 2012) ..............................................23

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ...................................................................22

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) .......................................................................7

*Ibey v. Taco Bell Corp.*,
2012 WL 2401972 (S.D. Cal. June 18, 2012) .........................................24

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*,
275 F. Supp. 3d 218 (D.D.C. 2017).........................................................17

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ...................................................................18

*In re: McCormick & Co., Inc.*,
217 F. Supp. 3d 124 (D.D.C. 2016).........................................................17

*James M. Green et al. v. Monrovia Nursery Company*,
2019 WL 7173141 (C.D. Cal. Nov. 5, 2019) ............................................11

*Kashian v. Harriman*,
98 Cal. App. 4th 892 (2002) .........................................................................5

*Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*,
2019 WL 3766654 (S.D. Cal. Aug. 9, 2019)............................................24

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007)...........................................................16, 17, 18, 19

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) .......................................................................5

*Mansell v. Otto*,
108 Cal. App. 4th 265 (2003) .......................................................................5

*Mazzocco v. Lehavi*,
2015 WL 12672026 (S.D. Cal. Apr. 13, 2015) ..........................................9

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) .....................................................................10

*Metro Indus., Inc. v. Sammi Corp.*,
82 F.3d 839 (9th Cir. 1996) ........................................................................18

*Microsoft Corp. v. M. Media*,
2018 WL 5094969 (C.D. Cal. Mar. 13, 2018)............................................7

*Neville v. Chudacoff*,
160 Cal. App. 4th 1255 (2008) ....................................................................3

*Newcal. Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008) ...................................................................22

*Ohio v. Am. Express Co.*,
138 S. Ct. 2274, 201 L. Ed. 2d 678 (2018)................................................16

*Or. Nat'l Res. Council v. Mohla*,
944 F.2d 531 (9th Cir. 1991) ......................................................................6

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
939 F. Supp. 2d 1002 (N.D. Cal. 2013)......................................................18

*Partington v. Bugliosi*,
56 F.3rd 1147 (9th Cir. 1995) ..............................................................12, 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018) .................................................................7, 10

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)..................................................................................8, 10

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
2019 WL 4747671 (S.D. Cal. Sept. 27, 2019)...........................................14

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ...............................................................18, 20

*Ricketts v. Kwan*,
2019 WL 4033934 (C.D. Cal. Aug. 23, 2019) ...........................................23

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
179 F.3d 704 (9th Cir. 1999) ................................................................2, 4

*Rupert v. Bond*,
68 F. Supp. 3d 1142 (N.D. Cal. 2014)........................................................9

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) .....................................................................14

TP-LINK'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS

*Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*,
2013 WL 12243947 (C.D. Cal. Feb. 19, 2013) ...................................................24

*Silberg v. Anderson*,
50 Cal.3d 205 (1990) ...................................................5

*Solyndra Residual Tr. by & through Neilson v. Suntech Power Holdings Co.*,
62 F. Supp. 3d 1027 (N.D. Cal. 2014) ...................................................20

*State Oil Co. v. Khan*,
522 U.S. 3 (1997) ...................................................17

*Taus v. Loftus*,
40 Cal.4th 683 (2007) ...................................................5

*Tommy Bahama Grp., Inc. v. Sexton*,
2009 WL 4673863 (N.D. Cal. Dec. 3, 2009) .................................6, 11, 12

*U.S. v. Apple*,
791 F.3d 290 (2d Cir. 2015) ...................................................17, 18

*U.S. v. Am. Express Co.*,
838 F.3d 179 (2d Cir. 2016) ...................................................16

*U.S. v. Topco Assocs., Inc.*,
405 U.S. 596 (1972) ...................................................16

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
2016 WL 524761 (N.D. Cal. Feb. 2, 2016) ...................................................9

*USS–POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL–CIO*,
31 F.3d 800 (9th Cir. 1994) ...................................................9

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ...................................................8, 9

**Statutes**

15 U.S.C. § 1051 ...................................................3

15 U.S.C. § 1114 ...................................................2, 3

Cal. Civ. Proc. Code § 47 ...................................................5

Cal. Civ. Proc. Code § 425.16 ...................................................3, 14

TP-LINK'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS

1

**Rules**

2

Fed. R. Civ. P. 9(b) ............................................................................................... 10, 11

3

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 6, 7, 10

4

Fed. R. Civ. P. 15(a)(3) ............................................................................................ 14

5

Fed. R. Civ. P. 56 ....................................................................................................... 7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TP-LINK'S REPLY ISO MOTION TO STRIKE AND/OR DISMISS

# INTRODUCTION

Careful Shopper contends in its Opposition that it may sidestep the unambiguous provisions of California's anti-SLAPP statute, the litigation privilege, and *Noerr-Pennington* doctrine by merely asserting some defenses on the merits to TP-Link's Lanham Act claim. That is not the law. As for its hastily cobbled together antitrust counterclaim (the purpose of which is to avoid the anti-SLAPP statute), Careful Shopper resorts to arguing allegations from other cases without addressing the claim's legal sufficiency.

Importantly, Careful Shopper does not challenge the fact that the at-issue pre-suit communications are of the type the anti-SLAPP statute protects, or the contents of the webform alleged in the ACC. Instead, Careful Shopper asserts that TP-Link's submissions to Amazon are not related to the instant suit and are "lies." Careful Shopper argues that the selection of "counterfeiting" from a drop-down menu of potential trademark issues is unrelated to this action because TP-Link's Complaint does not use the word "counterfeit." That ignores settled law only requiring pre-suit communications to be regarding the same underlying facts as contemplated litigation, and the Lanham Act's inclusion of trademark counterfeiting in its purview. Careful Shopper's characterizing of pre-suit complaints as "lies" is immaterial; neither the anti-SLAPP statute nor the litigation privilege have a bad-faith or "sham" exception. Further, Careful Shopper has not met the high bar of the *Noerr-Pennington* doctrine's sham exception. It has not shown—and cannot show—that the trademark complaints were objectively baseless. TP-Link's communications constitute protected activity under the anti-SLAPP statute and are shielded from liability by the California litigation privilege and *Noerr-Pennington* immunity. Accordingly, for the reasons set forth below and in TP-Link's motion, Careful Shopper's state law claims must be dismissed.

Careful Shopper's defense of its antitrust claims fares no better. Careful Shopper ignores Supreme Court authority that forecloses *per se* treatment of the types

1  of restraints alleged here, and does not come close to identifying antitrust injury or

2  even a relevant market. Nor can it. A single participant's unilateral intrabrand

3  restrictions to protect its brand does not have an interbrand effect.

4      The ACC must be dismissed in its entirety without leave to amend.

5  **ARGUMENT**

6  **I.   TP-LINK'S REPORTS TO AMAZON ARE REASONABLY**

7       **RELATED TO THE SUBJECT MATTER OF THIS ACTION**

8      Careful Shopper does not dispute that the anti-SLAPP statute applies to the

9  kind of communications which are the subject of Careful Shopper's amended

10  counterclaims. Rather, Careful Shopper disputes that the at-issue intellectual property

11  violation reports were made in connection with this action because the reports to

12  Amazon supposedly used the term "counterfeit," whereas TP-Link's Complaint

13  involves trademark infringement. Careful Shopper's Opposition ("Opp.") (ECF No.

14  70) at 8:16-10:13. Careful Shopper contends that TP-Link seeks to introduce a

15  "previously-unseen terminology in a vain effort to blur the distinction between

16  trademark infringement and counterfeiting, to wit: 'trademark counterfeiting.'" [1] *Id.*

17      Careful Shopper's made up standard of what constitutes a statement "in

18  connection with" litigation finds no support in the law. As an initial matter, TP-Link

19  has alleged violations of the Lanham Act, which prohibits trademark infringement

20  and trademark counterfeiting. *See* 15 U.S.C. § 1114(1)(a). And contrary to Careful

21  Shopper's contention, "trademark counterfeiting" is not a "previously-unseen

22  terminology" as it falls squarely within the Lanham Act. *See, e.g.*, *Rolex Watch,*

23  *U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir. 1999) ("Where, as here, the

24  district court finds trademark counterfeiting in violation of section 1114(1)(a), the

25  district court must, when requested, address whether the prevailing party is entitled to

26

27  _____

28  [1] Careful Shopper does not dispute that TP-Link's communications were directed to persons having some interest in the litigation—Amazon.

1    the remedies provided by section 1117(b) for those violations.").

2           Further, a statement is protected by the anti-SLAPP statute (and privileged) if

3    "it has some reasonable relevancy to the subject matter of the action." *Neville v.*

4    *Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008). As detailed in TP-Link's motion,

5    *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079-EMC, 2018 WL 306724 (N.D. Cal.

6    Jan. 5, 2018), illustrates the broad scope of protected activity under section

7    425.16(e)(2) of the anti-SLAPP statute. *See* TP-Link's Opening Motion ("Mot.")

8    (ECF No. 62) at 11. The *Fitbit* court, looking to the litigation privilege as a guide,

9    found that a pre-suit statement is reasonably relevant to the subject matter of the

10   action if the "underlying facts here are the same." *Id*. at *6. The court rejected the

11   argument that because the plaintiff used the term "stolen" goods in pre-suit letters but

12   did not allege theft in the subsequent lawsuit, only trademark infringement, that the

13   pre-suit letters were not protected. *Id.* The court found that "[w]hile the term "stolen"

14   may arguably overstate the culpability of the responsible parties, that assertion does

15   not negate the reasonable relationship of that allegation to the subject matter of this

16   lawsuit." *Id*.

17          Like *Fitbit*, Careful Shopper complains that the reports to Amazon were

18   overstated as "counterfeit," which according to Careful Shopper is "'hard core' or

19   'first degree' of trademark infringement." Opp. 10:1-10. The Lanham Act does not

20   distinguish "hard core" or "first degree" infringement. Amazon's on-line fillable

21   webform titled "Report Infringement" provides under "trademark concerns" the

22   option to select "counterfeit." Mot. 3:22-5:3. Following the reports to Amazon, TP-

23   Link filed an action for violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*., which

24   includes trademark infringement and counterfeiting under § 1114. *See* Compl. (ECF

25   No. 1) ¶¶ 42-48. The fact that Careful Shopper's conduct may give rise to different

26   causes of action does not negate the reasonable relationship of those pre-suit

27   communications to the subject matter of this action—both of which concern TP-Link

28   products improperly being listed on the Amazon marketplace in violation of TP-

1  Link's intellectual property rights. Careful Shopper fails to meaningfully (or

2  otherwise) distinguish *Fitbit*. Opp. 14 n. 21.

3         Careful Shopper attempts to distinguish two cases—*Harman Int'l Indus. Inc. v.*

4  *Pro Sounds Gear, Inc.*, No. 17-cv-06650-ODW, 2018 WL 1989518 (C.D. Cal. Apr.

5  24, 2018) and *Rolex Watch, U.S.A., Inc. v. Michel Co*., 179 F.3d 704 (9th Cir.

6  1999)—by arguing that trademark counterfeiting is not at issue in TP-Link's

7  Complaint. Opp. 8:25-9:18. Although Careful Shopper is wrong (Section 1114

8  encompasses trademark counterfeiting), the focus of the analysis regarding whether

9  pre-suit statements are protected activity is whether those statements are based on the

10  same underlying facts as TP-Link's Complaint. There is no dispute that the

11  underlying facts giving rise to TP-Link's reports to Amazon seeking to enforce its

12  intellectual property rights are the same underlying facts as those giving rise to this

13  lawsuit. As such, the at-issue statements are reasonably relevant to the instant lawsuit

14  and thus fall squarely within the protections of the anti-SLAPP statute.

15  **II.     THERE IS NO BAD-FAITH EXCEPTION TO THE PROTECTIONS**

16         **OF THE ANTI-SLAPP STATUTE OR CALIFORNIA'S LITIGATION**

17         **PRIVILEGE**

18         Careful Shopper argues that TP-Link's reports of infringement to Amazon are

19  not protected activity under either the first prong of the anti-SLAPP analysis or under

20  California's litigation privilege because the reports included "lies blocking [Careful

21  Shopper's] access to the marketplace." Opp. 10:14-22; *see* Opp. 14:17-22

22  ("adopt[ing]" its arguments with respect to the first prong of the anti-SLAPP analysis

23  in the section addressing the litigation privilege). Setting aside the baselessness of

24  Careful Shopper's charges, there is no bad-faith exception to the protections of either

25  the anti-SLAPP statute or the litigation privilege.

26         Both the California Supreme Court and the Ninth Circuit have made clear that

27  in determining whether challenged claims arise from activity protected by the anti-

28  SLAPP statute, a court does not evaluate whether the activity was in good or bad faith

1   or even lawful or unlawful. *See, e.g.*, *Doe v. Gangland Prods., Inc.*, 730 F.3d 946,

2   954 (9th Cir. 2013) ("California courts consistently hold that defendants may satisfy

3   their burden to show that they were engaged in conduct in furtherance of their right of

4   free speech under the anti-SLAPP statute, even when their conduct was allegedly

5   unlawful."); *Gangland*, 730 F.3d at 954 ("Contrary to the district court's analysis, a

6   plaintiff's assertion that its claims are 'based on [defendants'] alleged abusive activity

7   does not . . . exempt a lawsuit from anti-SLAPP scrutiny.'"); *Adobe Sys. Inc. v.*

8   *Coffee Cup Partners, Inc.*, No. 11-cv-2243-CW, 2012 WL 3877783, at *12 (N.D.

9   Cal. Sept. 6, 2012) ("To the extent Wowza argues that, because it alleges Adobe

10  made fraudulent statements in the letters in bad faith, the letters are outside of the

11  scope of § 425.16(e)(1) and (2), this argument is unavailing."); *Taus v. Loftus*, 40

12  Cal.4th 683, 706-07, 713 (2007) (defendants' investigation, including an interview

13  that was allegedly fraudulently obtained, constituted protected activity); *Hall v. Time*

14  *Warner, Inc.*, 153 Cal. App. 4th 1337, 1343 (2007) (same); *Lieberman v. KCOP*

15  *Television, Inc.*, 110 Cal. App. 4th 156, 165-66 (2003) (concluding defendants'

16  newsgathering, including the use of surreptitious videotape recordings that were

17  allegedly illegally obtained, constituted protected activity).

18       Likewise, California's litigation privilege, under California Code of Civil

19  Procedure § 47, is "absolute." *Flatley v. Mauro*, 39 Cal.4th 299, 322 (2006). "[T]he

20  presence or absence of malice or good or bad faith is irrelevant to the inquiry whether

21  the litigation privilege is applicable." *Adobe*, 2012 WL 3877784, at *12 (quoting

22  *Mansell v. Otto*, 108 Cal. App. 4th 265, 279 n.47 (2003)); *see Collins v. Allstate*

23  *Indem. Co.*, 428 F. App'x 688, 689 (9th Cir. 2011) ("Section 47 applies to the

24  communications (even if made in bad faith) . . . ."); *Kashian v. Harriman*, 98 Cal.

25  App. 4th 892, 913 (2002) ("The litigation privilege is absolute; it applies, if at all,

26  regardless whether the communication was made with malice or the intent to harm.

27  Put another way, application of the privilege does not depend on the publisher's

28  'motives, morals, ethics or intent.'" (quoting *Silberg v. Anderson*, 50 Cal.3d 205, 212

1   (1990))).

2       Careful Shopper cites two cases purportedly supporting the proposition that a

3 party's subjective motivation is relevant to the Court's analysis of whether activity is

4 protected under the anti-SLAPP statute and California's litigation privilege. *See* Opp.

5 10 n.17 (citing *Or. Nat'l Res. Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991) &

6 *Tommy Bahama Grp., Inc. v. Sexton*, No. C 07-06360-EDL, 2009 WL 4673863, at

7 *12 (N.D. Cal. Dec. 3, 2009), *aff'd*, 476 F. App'x 122 (9th Cir. 2012)).  Both cases

8 are inapposite.

9       First, in *Mohla*, neither the anti-SLAPP statute nor the California litigation

10 privilege were at issue. *See generally Mohla*, 944 F.2d 531. Indeed, the language

11 from *Mohla* quoted by Careful Shopper—referring to "a mere sham to cover what is

12 actually nothing more than an attempt to interfere directly with the business

13 relationships of a competitor"—is merely a description of the sham exception to the

14 *Noerr-Pennington* doctrine, *id.* at 534, a distinct doctrine addressed in Section III.C

15 below.

16       Likewise, in *Tommy Bahama*, neither the anti-SLAPP statute nor the California

17 litigation privilege were at issue. *See generally Tommy Bahama*, 2009 WL 4673863.

18 As explained more fully in Section III.D. below, the discussion of "good faith" in

19 *Tommy Bahama* relates to whether the defendant's defamation counterclaim was

20 subject to the "common-interest privilege," which, unlike the absolute litigation

21 privilege, is a qualified privilege that applies only to communication made "without

22 malice" *Id.* at *13.

23       Careful Shopper's contention that TP-Link's acts were "lies" and in bad-faith

24 should be disregarded. The anti-SLAPP statute and litigation privilege render TP-

25 Link's statements protected activity and non-actionable.

26 **III.**   **CAREFUL SHOPPER CONTINUES TO FAIL TO ESTABLISH A**

27       **PROBABILITY OF PREVAILING ON ITS STATE LAW CLAIMS**

28       **A.  Careful Shopper Relies on the Wrong Legal Standard**

1    As an initial matter, Careful Shopper misstates the standard applicable to the

2    second prong of the anti-SLAPP analysis. Opp. 11:2-12. Specifically, Careful

3    Shopper cites *Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010), for the

4    proposition that a "somewhat minimal showing" is required to overcome an anti-

5    SLAPP motion. *Id.*  However, *Hilton* pre-dates the Ninth Circuit's decision *Planned*

6    *Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.

7    2018), *amended*, 897 F.3d 1224 (9th Cir. 2018), which addressed the standard to be

8    applied by federal courts to anti-SLAPP motions.

9    In *Planned Parenthood*, the Ninth Circuit clarified that where, as here, "an

10   anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a

11   district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and

12   consider whether a claim is properly stated." *Id.* at 834. The "minimal showing"

13   standard referenced by Careful Shopper is applied only in cases where an anti-SLAPP

14   motion challenges the *factual* sufficiency of a claim, in which case the Federal Rule

15   of Civil Procedure 56 standard would apply. *Id*. In that situation, the party opposing

16   an anti-SLAPP motion would meet its burden by showing the challenged claim has

17   "minimal merit" by demonstrating factual sufficiency through the submission of

18   evidence. *Id.*

19   Here, as each of the grounds in TP-Link's motion to strike—the litigation

20   privilege, *Noerr-Pennington* doctrine, and failure to state a claim—challenge the

21   counterclaims' *legal* sufficiency, the Rule 12(b)(6) standard applies. Careful

22   Shopper's claims fail as a matter of law.

23   ## B.   The California Litigation Privilege Applies For the Same Reason

24   ##        as the Anti-SLAPP Statute

25   "The breadth of the litigation privilege cannot be understated. It immunizes

26   defendants from virtually any tort liability." *Grant & Eisenhofer, P.A. v. Brown*, No.

27   CV 17-5968-PSG, 2017 WL 6343506, at *5 (C.D. Cal. Dec. 6, 2017) (citations and

28   quotations omitted); *see Microsoft Corp. v. M. Media*, No. CV-17-347-MWF, 2018

WL 5094969, at *7 (C.D. Cal. Mar. 13, 2018) (anti-SLAPP motions targeting counterclaims "are routinely granted based on the litigation privilege"). Careful Shopper presents no additional arguments as to why the litigation privilege should not apply. Opp. 14:16-22. Thus, the reasons stated in TP-Link's brief in relation to the anti-SLAPP statute, Mot. 12:11-13:12, and in Section II above, apply equally with respect to the litigation privilege.

## C. The *Noerr-Pennington* Sham Exception Does Not Apply

Careful Shopper's opposition does nothing to rebut the application of the *Noerr-Pennington* doctrine to preclude each of the counterclaims. Opp. 21-24. Specifically, although Careful Shopper purports to invoke the sham exception to the *Noerr-Pennington* doctrine, it fails to show that TP-Link's intellectual property claims—in the reports to Amazon or the instant litigation—are "objectively baseless." As the Supreme Court has explained, "objectively baseless" means that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993)). Conversely, a claim has merit if an "objective litigant" could conclude that it is "reasonably calculated to elicit a favorable outcome." *Id.* at 60. For example, a claim is not objectively baseless if it is "arguably warranted by existing law or at the very least [is] based on an objectively good faith argument for the extension, modification, or reversal of existing law."[2] *Id.* at 65. The burden is on the party asserting the exception to "disprove" the "legal viability" of the challenged claim. *Id.* at 61.

The Ninth Circuit "do[es] not lightly conclude in any *Noerr-Pennington* case" that the litigation or pre-litigation activity in question is objectively baseless, "as

---

[2] *See, e.g.*, *Carpenters Local Union 721 v. Limon*, No. 17 Civ. 4426-DSF, 2018 WL 3815036, at *2 (C.D. Cal. Feb. 27, 2018) ("[A] suit is not objectively baseless if it is 'arguably warranted by existing law or at the very least [is] based on an objectively good faith argument for the extension, modification, or reversal of existing law.'" (quoting *Prof'l Real Estate*, 508 U.S. at 65)).

1   doing so would leave that action without the ordinary protections afforded by the

2   First Amendment, a result [the court] would reach only with great reluctance." *White*

3   *v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000). Moreover, courts in this Circuit have

4   regularly applied the *Noerr-Pennington* doctrine to preclude claims at the motion to

5   dismiss stage. *See, e.g.*, *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F.

6   App'x 406 (9th Cir. 2017); *Empress LLC v. City and Cty. of San Fran.*, 419 F.3d

7   1052, 1057 (9th Cir. 2005); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*,

8   No. 14-cv-04050-MEJ, 2016 WL 524761, at *6 (N.D. Cal. Feb. 2, 2016); *Mazzocco*

9   *v. Lehavi*, No. 14CV2112-AJB, 2015 WL 12672026, at *8 (S.D. Cal. Apr. 13, 2015);

10  *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1159 (N.D. Cal. 2014).

11        Careful Shopper fails to disprove the legal viability of TP-Link's claim that the

12  at-issue listings violated TP-Link's intellectual property rights. If Careful Shopper

13  truly believed that TP-Link's claims were not viable as a matter of law, it would have

14  filed a motion to dismiss pursuant to Rule 12. As the Opposition confirms, Careful

15  Shopper's sham exception showing is nothing more than a failed argument on the

16  merits. In its motion, TP-Link cited extensive case law demonstrating the legal

17  viability of the principle that the sale of goods materially different from a trademark

18  owner's authorized goods, such as where there is a difference in warranty protection,

19  constitutes trademark infringement and trademark counterfeiting. Mot. 9-10, 15. In

20  response, Careful Shopper contends that TP-Link "selectively quot[ed]" from the

21  cited cases, and raises theories such as the "first sale" doctrine, that a New York

22  statute prevents any warranty disclaimer, and that the term "counterfeiting" is

23  "critically distinguishable" from "trademark infringement." Opp. 10. Such arguments

24  are unavailing to defeat application of the *Noerr-Pennington* doctrine and the high

25  hurdle of showing TP-Link's claims are "objectively baseless."

26        As a result, TP-Link's subjective motivation (*i.e.*, the second prong of the

27  sham exception analysis) is irrelevant to the analysis. *See USS–POSCO Indus. v.*

28  *Contra Costa Cty. Bldg. & Constr. Trades Council, AFL–CIO*, 31 F.3d 800, 810 (9th

Cir. 1994) ("The two parts of the [sham exception] test operate in succession: only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent."). However, even if the Court were to reach the subjective prong, the *Noerr-Pennington* doctrine would still apply. Careful Shopper's ACC is devoid of allegations, let alone allegations pled with specificity, from which it can plausibly be inferred that TP-Link's real goal was not the removal of the specified product listings so as to protect its intellectual property rights, but, rather, was to hurt Careful Shopper through the Amazon complaint process. *See Prof'l Real Estate*, 58 U.S. at 61 (The question on the subjective prong is "whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon."). Any alleged harm to Careful Shopper was caused by the outcome of the process, not the process itself.

### D.   Careful Shopper's Trade Libel Claim Fails to Provide the Requisite Specificity under Rule 9(b)

Careful Shopper confuses its previously alleged libel *per se* claim with its currently pleaded trade libel claim. Opp. 11:14-13-6. Trade libel requires different elements than libel *per se*, and is subject to Rule 9(b)'s heightened pleading requirements. Mot. 16:7-17:5. To satisfy Rule 9(b)'s heightened pleading standards, Plaintiff must, at a minimum, identify the substance of each allegedly libelous statement. *Id*; *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04-cv-2562 JM, 2005 WL 5517731, at *3 (S.D. Cal. Aug. 9, 2005).

*First*, Careful Shopper's pleading only contains the communications it received from Amazon, ACC ¶¶ 117, 122, 124; instead, its pleadings must include the specific language TP-Link allegedly conveyed to Amazon giving rise to its trade libel claim, Mot. 16:20-25. Careful Shopper relies on *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) for the proposition that it is not required to provide such detail. Opp. 12:7-12. Such reliance is misplaced because *Metabolife* was decided pre-

1  *Planned Parenthood*, which clarified the applicable standard for a Rule 12(b) motion,

2  and regardless does not relieve Careful Shopper of its obligation under Rule 9(b).

3      *Second*, a cause of action for trade libel requires "special damages." Mot.

4  16:26-17:5. To sufficiently allege special damages, Careful Shopper must "identify

5  the particular purchasers who have refrained from dealing with [it], and specify the

6  transactions of which [it] claims to have been deprived." *Amaretto Ranch Breedables,*

7  *LLC v. Ozimals, Inc*., No. CV 10–5696-CRB, 2013 WL 3460707, at *6 (N.D. Cal.

8  July 9, 2013) (citation omitted). Trade libel remedies tortious conduct that causes

9  purchasers to refrain from transacting with a plaintiff. *Id*. at *6. Careful Shopper does

10 not allege that any consumer has refrained from purchasing products that it sells—

11 rather, it alleges expulsion from the Amazon marketplace. Careful Shopper has

12 provided no authority that trade libel can be extended to cover tortious conduct

13 resulting in expulsion from a marketplace platform.[3]

14     *Third,* as set forth in TP-Link's motion (Mot. 17), any statement contained in

15 the identified Amazon reporting form constitutes non-actionable opinion. *See, e.g.*,

16 *Tommy Bahama*, 2009 WL 4673863; *James M. Green et al. v. Monrovia Nursery*

17 *Company*, No. 2:18-cv-05257-RGK, 2019 WL 7173141, at *6 (C.D. Cal. Nov. 5,

18 2019) ("Since mere opinions cannot by definition be false statements of fact, opinions

19 will not support a cause of action for trade libel." (citing *ComputerXpress, Inc. v.*

20 *Jackson*, 93 Cal. App. 4th 993, 1011 (2001))).

21 _____

22 [3] Careful Shopper has scoured the federal dockets to identify transcripts from other
   litigations and presents out-of-context judicial statements as persuasive authority.

23 ECF No. 76 (including transcripts from *Eternity Mart, Inc. v. Nature's Sources, LLC*,

24 Case No. 1:19-cv-02436 (N.D. Ill.) and *Johnson v. Incopro, Inc., et al.*, Case No.
   1:18-cv-00689 (E.D. Va.)). *First*, neither addresses *trade libel*, which is subject to

25 Rule 9(b) and requires a pleading that consumers chose not to do business with

26 Careful Shopper.  *Second*, neither addresses California's anti-SLAPP statute or its
   absolute litigation privilege. *Third,* neither addressed the specific type of

27 communication alleged here: the selection of "counterfeiting" from a drop-down list

28 of potential trademark concerns.

1    *Tommy Bahama* involved a counterclaim for defamation against an intellectual

2    property rights-owner based on its submission of an intellectual property

3    infringement report to the operator of an online marketplace. *Tommy Bahama*, 2009

4    WL 4673863, at *1-4. There, like here, to lodge an infringement report, a rights

5    owner "chooses from among several eBay-drafted reasons and explanations for the

6    claimed infringement," and confirms that by sending the report, the rights-owner

7    declares that it has a good faith belief that the listing infringes its intellectual property

8    rights. *Id.* at *3, *14. As the *Tommy Bahama* court held, "[s]uch qualified language is

9    not a 'provably false' statement of fact; it is a statement of opinion that is not

10   actionable as defamation, even if ultimately proven false." *Id.* at *14.

11   In a confused effort to avoid the implications of *Tommy Bahama*, Careful

12   Shopper argues that "[i]n *Tommy Bahama*, the court noted that 'there is no evidence

13   of malice,' '[the rights-owner plaintiff] made a good faith effort to distinguish

14   between authentic and non-authentic goods, and only reported those goods that it had

15   reason to believe were actually counterfeits.'" Opp. 13. However, these quotes are

16   from the court's discussion of the qualified common-interest privilege, which applies

17   only to communications made "without malice," *Tommy Bahama*, 2009 WL

18   4673863, at *13, and not to the separately addressed and entirely distinct issue of

19   whether a statement is actionable fact or non-actionable opinion, *id.* at *14. TP-Link

20   has not raised the common-interest qualified privilege as a ground for striking or

21   dismissing Careful Shopper's defamation counterclaim.

22   *Finally*, Careful Shopper's opposition fails to address the Ninth Circuit

23   precedent cited in TP-Link's opening motion, Mot. 17, pursuant to which a speaker's

24   "interpretation of the facts presented," is an expression of non-actionable opinion

25   "because the reader is free to draw his or her own conclusion based upon those facts."

26   *Partington v. Bugliosi*, 56 F.3rd 1147, 1156-57 (9th Cir. 1995). Here, a rights owner

27   submitting a report using Amazon's report form lists the items believed to infringe its

28   intellectual property rights, and chooses from among the Amazon-drafted options on

1   the form's drop-down menus. *See* Mot. 4. The rights owner submits the form to

2   Amazon with an affirmation that it has a good faith "belief" that the "content(s)

3   described above" violates the owner's rights and that "the use of such content(s) is

4   contrary to law." *See id.* Amazon then considers the report and may or may not reach

5   the same interpretation of the information presented as the reporter; in other words,

6   Amazon, the reader, "is free to draw [its] own conclusion." *Partington*, 56 F.3rd

7   1147; *see Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 378 (2004)

8   (emails to companies were non-actionable as trade libel because they purported to

9   apply copyright law to facts for the reader to draw the conclusion that the plaintiff

10  had violated copyright law).

11       As such, TP-Link's opinion statements in the report to Amazon do not give rise

12  to an actionable claim of defamation.

13       **E.   The Tortious Inference Claim Fails to Allege Independent**

14            **Wrongful Acts**

15       Careful Shopper now asserts that even if this Court dismisses the trade libel

16  and Sherman Act claims, it still has a cause of action for tortious interference because

17  it has alleged the wrongful act of restraint of trade in two paragraphs of the ACC.

18  Opp. 15:16-17:4. To support this proposition, Careful Shopper cites *Della Penna v.*

19  *Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376 (1995), as "squarely hold[ing]" that

20  an interfering party is liable when he restrains trade. Opp. 16:3-17:4. Such reliance is

21  misplaced and misleading. *First*, the quote is from the concurrence, which also found

22  contrary to the majority that it would not adopt the standard of "wrongfulness." *Id*. at

23  414. The majority did not address what would be an independent wrongful act, but

24  that this was a requirement in seeking to recover for a claim of interference with

25  prospective economic relations beyond the fact of the interference itself. *Id*. at 378-

26  79. *Second*, *Della Penna* is factually distinguishable. In *Della Penna*, Toyota

27  included a "no export" policy in its contracts with its distributors. *Id*. at 379-80. No

28  such contract restraining trade exists here.

1    Careful Shopper's trade libel and antitrust claims fail and it has not and cannot

2    identify any statute, law, or legal standard that TP-Link violated. Accordingly, this

3    counterclaim fails as a matter of law.

4    **IV.   TP-LINK'S ANTI-SLAPP MOTION IS TIMELY**

5    Careful Shopper's argument that TP-Link's motion to strike is "too late," Opp.

6    7-8, is without merit. The anti-SLAPP statute provides that the motion "may be filed

7    within 60 days of the service of the complaint or, in the court's discretion, at any time

8    upon terms it deems proper." Cal. Civ. Proc. Code § 425.16(f). However, because the

9    anti-SLAPP statute's timing provision is a procedural rule that is in conflict with the

10   Federal Rules of Civil Procedure, it does not apply in federal court. *See, e.g.*, *Sarver*

11   *v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) ("We therefore decline to apply the

12   [anti-SLAPP] statute's 60-day time frame in federal court, and we refer instead to our

13   own rules of procedure. Under those rules, the defendants' anti-SLAPP motions were

14   timely filed.").

15   Where, as here, a motion to strike challenges the legal sufficiency of claims,

16   and is thus "analogous to a motion to dismiss," the Federal Rule of Civil Procedure's

17   timing requirements for motions to dismiss apply. *See Quidel Corp. v. Siemens Med.*

18   *Sols. USA, Inc.*, No. 16-cv-3059-BAS, 2019 WL 4747671, at *2-3 (S.D. Cal. Sept.

19   27, 2019) ("A motion to dismiss must be filed within 21 days of service. Fed. R. Civ.

20   P. 12(a). The present Motion to Strike was filed 17 days after service of the

21   counterclaims, thus, the Motion is timely."). Here, Careful Shopper filed its amended

22   third-party complaint and amended counterclaims on January 3, 2020. ECF No. 54.

23   Thus, the instant motion, filed on January 17, 2020, was within the deadline provided

24   under the Federal Rules of Civil Procedure, and is timely. *See* Fed. R. Civ. P. 15(a)(3)

25   ("Unless the court orders otherwise, any required response to an amended pleading

26   must be made within the time remaining to respond to the original pleading or within

27   14 days after service of the amended pleading, whichever is later.").

28   It should be noted that Careful Shopper first asserted third-party claims and

counterclaims in this action on November 12, 2019. *See* ECF No. 36. Pursuant to a joint stipulation, TP-Link's deadline to respond was January 3, 2020 (ECF No. 43), which is within 60 days of the filing of the third-party claims and counterclaims. TP-Link intended to file its motion to strike or, in the alternative, dismiss on that date, but Careful Shopper instead filed its operative amended third-party complaint and amended counterclaims that day, adding new claims of trade libel and anti-trust violations. *See* ECF No. 54. TP-Link promptly filed this timely motion in response to the amended pleading.

Careful Shopper makes a puzzling argument that TP-Link should have filed a motion to strike *prior* to Careful Shopper's November 12, 2019 filing of the original third-party claims and counterclaims.[4] Opp. 7. The suggestion that Careful Shopper somehow should have moved to strike non-existent claims in this action is illogical. Equally illogical is Careful Shopper's suggestion that TP-Link should have, or could have, moved to strike the claims asserted by Careful Shopper in the Eastern District of New York, which, as set forth in its order of dismissal, lacked jurisdiction to hear those claims.

## V.   THE ANTITRUST COUNTERCLAIM FAILS AS A MATTER OF LAW[5]

### A.   The *Per Se* Rule Does not Apply to the Alleged Restraints

Careful Shopper insists that TP-Link's agreement with Amazzia was a "joint collaborative action of horizontal competitors" and thus "a *per se* violation of the Sherman Anti-Trust Act." Opp. 20. Careful Shopper is correct that the "instant

---

[4] Likewise, Careful Shopper inexplicably contends that TP-Link should have mentioned its anti-SLAPP motion in the joint amended Rule 26(f) report filed on November 1, 2019—18 days before Careful Shopper filed its original third-party claims and counterclaims. Opp. 6.

[5] As explained above, the *Noerr-Pennington* doctrine's sham exception does not apply to the facts here. The antitrust claim is thus foreclosed.

1  arguments put into play Amazzia's status as a competitor," but is wrong that it may
2  simply ignore that glaring deficiency. Opp. 17. Careful Shopper does not plead any
3  agreement among "horizontal competitors."

4       Without a single citation to the ACC, Careful Shopper now argues that
5  "Amazzia is and always has been an active third-party seller on Amazon, just as TP-
6  Link." Opp. 18. Notably absent from that description is any suggestion that TP-Link
7  and Amazzia *compete*. Careful Shopper fails to identify any allegation that TP-Link
8  and Amazzia sell any of the same products, that Amazzia sells or distributes TP-Link
9  products, or that TP-Link offers brand protection services. Instead, Careful Shopper
10 points to a nonparty "called Netrush, Inc.," which supposedly "migrated regularly to
11 exclusive brand management for highly successful brands." Opp. 18. It is well
12 established that in the absence of competition, there can be no horizontal restraint.
13 *Bus. Elecs. Corp. v. Sharp Elecs. Corp.,* 485 U.S. 717 (1988) ("[r]estraints imposed
14 by agreement between competitors have traditionally been denominated as horizontal
15 restraints."); *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 886
16 (2007) ("horizontal agreements among competitors to fix prices" are *per se*
17 unlawful).

18       Careful Shopper cannot impose the *per se* rule based on an empty assertion that
19 "Amazzia is an actual or potential competitor in the relevant market where harm to
20 competition and consumers was felt." Opp. 18-19. Whether a restraint is horizontal
21 does not depend on "whether its anticompetitive *effects* are horizontal," but "whether
22 it is the product of a horizontal agreement." *Bus. Elecs. Corp.*, 485 U.S. at 730 n.4
23 (emphasis in original). Even if Amazzia is a distributor of TP-Link products (and it is
24 not), any agreement between TP-Link and Amazzia would be a vertical, not
25 horizontal, restraint. *U.S.  v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972)
26 (agreements between suppliers and distributors are vertical); *U.S. v. Am. Express Co.*,
27 838 F.3d 179, 194 (2d Cir. 2016)*, aff'd sub nom. Ohio v. Am. Express Co*., 138 S. Ct.
28 2274, 201 L. Ed. 2d 678 (2018) (same); *Gough v. Rossmoor Corp.*, 585 F.2d 381, 387

1    (9th Cir. 1978) (same). Careful Shopper's allegation that TP-Link is also a "third-

2    party seller" on Amazon (Opp. 18) does not change the analysis.  Dual-distribution

3    systems—*i.e.* ones where a company sells directly to consumers and also distributes

4    downstream—are analyzed under the rule of reason. *In re: McCormick & Co., Inc.*,

5    217 F. Supp. 3d 124, 136 (D.D.C. 2016), *amended on reconsideration sub nom. In re*

6    *McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 275 F. Supp.

7    3d 218 (D.D.C. 2017) (collecting cases and authorities describing dual-distribution

8    restraints).

9         Ignoring the weight of the authority, Careful Shopper asserts that

10   "[e]limination of discounters and discounted products . . . is a *per se* violation." Opp.

11   20. Absent from the Opposition is any effort to address *Leegin*, in which the Supreme

12   Court noted that the elimination of "discounting retailers" can have pro-competitive

13   effects and held unequivocally that the types of restraints Careful Shopper alleges—

14   the supposed elimination of unauthorized sellers and the maintenance of minimum

15   advertised pricing (Opp. 19)—are not *per se* unlawful. 551 U.S. at 890-91. As the

16   Court explained, [m]inimum resale price maintenance can stimulate interbrand

17   competition among manufacturers." 551 U.S. at 878. "This is important because the

18   antitrust laws' 'primary purpose . . . is to protect interbrand competition.'" *Id.*

19   (quoting *State Oil Co. v. Khan*, 522 U.S. 3 (1997)). The elimination of *intra*brand

20   price competition "encourages retailers to invest in services or promotional efforts

21   that aid the manufacturer's position as against rival manufacturers." *Id.* In fact, the

22   reason manufacturers sometimes impose such restrictions is to preclude "discounting

23   retailers" that "free ride on retailers who furnish services and then capture some of

24   the demand those services generate." *Id.; see also Brantley v. NBC Universal, Inc.*,

25   675 F.3d 1192, 1200 (9th Cir. 2012) (restraints on "intrabrand competition [] may

26   increase interbrand competition" and are thus subject to rule-of-reason scrutiny).

27         Nor does Careful Shopper allege a "hub-and-spoke" conspiracy where a

28   defendant that is in a vertical relationship coordinates a restraint between downstream

distributors who are in horizontal relationships with each other. *See U.S. v. Apple*, 791 F.3d 290, 322 (2d Cir. 2015).[6] "A hub-and-spoke relationship can establish a horizontal arrangement, but there still must be a 'rim': an at least tacit understanding between the horizontal competitors that each would participate in the boycott." *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1008 (N.D. Cal. 2013); *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015) (explaining hub-and-spoke conspiracies).

Because Careful Shopper only alleges a horizontal *per se* violation, its claim must be dismissed.

## B.   Careful Shopper Has Not Pleaded Antitrust Injury

Careful Shopper admits that it has pleaded no injury to competition. Instead of addressing that fatal defect, it asks that the Court take judicial notice of a complaint by another plaintiff in a different action. Opp. 19. Even that fails as a matter of law because a plaintiff must plead facts supporting the inference "that the agreement at issue actually caused injury to competition within a market, beyond its impact on the plaintiff." *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir. 1996). "If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se*." *Rebel Oil Co., Inc. v. Atlantic Richfield Co*., 51 F.3d 1421, 1433 (9th Cir. 1995) (citation omitted).

The mere allegation that a distributor's intrabrand restrictions raised prices on some products (Opp. 19-20) is insufficient because the increase does not threaten

---

[6] Notwithstanding Careful Shopper's misleading footnote, *Apple* had nothing to do with intrabrand restraints on "discounters." Opp. 20 n.28. The court there addressed a coordinated strategy between Apple and book publishers (who were in a horizontal relationship with each other) to raise prices on e-books. 791 F.3d at 296. Apple (as the hub) provided a platform for the publishers and encouraged them to raise prices. *Id.*  All of them did. *Id.* Careful Shopper's reliance on pre-*Leegin* authority is misplaced.

1   competition in the relevant interbrand market. "When only a few manufacturers
2   lacking market power adopt the practice, there is little likelihood it is facilitating a
3   manufacturer cartel, for a cartel then can be undercut by rival manufacturers." *Leegin*,
4   551 U.S. at 897. Although a "*dominant* manufacturer or retailer can abuse resale price
5   maintenance for anticompetitive purposes," there is no antitrust concern "unless the
6   relevant entity has market power." *Id.* at 898 (emphasis added). In assessing market
7   power, courts "typically look to the defendant's market share, the ease of entry into
8   the market by new firms, and the level of competition in the market." *Barnes v. JFK*
9   *Mem'l Hosp., Inc.*, No. CV-17681-JGB, 2017 WL 7240813, at *7 (C.D. Cal. Aug. 28,
10  2017). There is no allegation TP-Link has *any* market power—let alone a dominant
11  position that would allow it to raise consumer prices to super-competitive levels.
12  Even if TP-Link does have substantial market share—which Careful Shopper has not
13  alleged—"the absence of barriers to entry by new firms or expansion by existing
14  firms" deprives it of "market power." *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261,
15  1267 (C.D. Cal. 2000).

16      Careful Shopper's Opposition illustrates the principle articulated in *Leegin*.
17  Careful Shopper claims it may be able to allege that TP-Link's removal of free-riding
18  retailers increased the prices for TP-Link products on Amazon. Opp. 19-20. That,
19  however, does not address the prices in the interbrand market, in which TP-Link
20  competes with other distributors and manufacturers of consumer electronics products.
21  If anything, TP-Link "loses; interbrand competition reduces [TP-Link's]
22  competitiveness and market share because consumers will" purchase a less expensive
23  substitute. *Leegin*, 551 U.S. at 896. Without market power, TP-Link cannot "keep
24  competitors away from" undercutting its prices. *Id.* at 898-99. Higher prices for TP-
25  Link products would naturally "facilitate[e] market entry for new firms and brands."
26  *Id.* That is why courts distinguish between a participant's "unilateral action to
27  increase the price of its" products and concerted action between horizontal
28  competitors. *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495,

504 (9th Cir. 2010).

While asserting that TP-Link's intrabrand restrictions increased prices for TP-Link products (but not the prices in the interbrand market), Careful Shopper bizarrely claims that TP-Link's conduct somehow amounts to predatory pricing. Opp. 27 n.32. *Solyndra Residual Tr. by & through Neilson v. Suntech Power Holdings Co.*, 62 F. Supp. 3d 1027, 1048 (N.D. Cal. 2014), on which Careful Shopper relies, addressed concerted efforts by solar panel manufacturers to *reduce* prices of their products to below cost in an effort to drive the plaintiff out of the marketplace, thereby reducing competition in the larger solar panel market. *Id.* at 1040-42. Not only can Careful Shopper not identify any concerted effect, TP-Link supposedly did the *opposite*: increased the prices of its own products by placing intrabrand restrictions. The natural consequence would necessarily be pro-competitive; others who make similar products could increase their market share by undercutting TP-Link's supposedly inflated prices.

All Careful Shopper alleges is that TP-Link places intrabrand restriction that has affected the ability of a single "discounter" to resell TP-Link products. That is plainly insufficient to state an antitrust claim. *Rebel Oil*, 51 F.3d at 1433 (antitrust concerns only exist where restraint "harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality"). Its regurgitation that "price competition was eliminated" and "output was reduced" (Opp. 20) are "naked assertions devoid of further factual enhancement" that the Supreme Court has rejected. *Ashcroft v. Iqbal,* 556 U.S. 662, 686 (2009). Antitrust law does not exist to facilitate the diversion of profits from authorized retailers (who ensure customers receive warranty coverage and invest to ensure customer satisfaction and goodwill) to fly-by-night "discounters" like Careful Shopper.

## C.   The *Copperweld* Doctrine Applies

Careful Shopper's rebuttal to *Copperweld* is merely a repetition that "a conspiracy of horizontal competitors to exclude discounters from the relevant market

is *per se* unlawful and not legitimate competitive conduct." Opp. 24. As explained above, there is no allegation that supports a finding of any horizontal competition. Moreover, Careful Shopper ignores its own allegation that Amazzia and TP-Link had "a common design," ACC ¶ 164, to exclude a *TP-Link* competitor. Amazzia was "at all times acting in concert with and *on behalf of TP-Link*, and with the latter's actual authority, instructions, and internet domain identity." ACC ¶ 93 (emphasis added). Section 1 liability cannot be premised on unilateral conduct. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984).

Careful Shopper still cannot point to any independent economic interest in Amazzia's protection of TP-Link's brand. There is no allegation in the ACC to support a finding that TP-Link and Amazzia are "potential competitors." Opp. 24. Careful Shopper cannot identify a single product or service that both TP-Link and Amazzia offer. The best Careful Shopper can muster is a vague assertion that some third-party sellers "migrate regularly to exclusive brand management." Opp. 24. There is no dispute that TP-Link's only business is to distribute products bearing the TP-Link brand. Amazzia does not. Nor is there any indication that the two are in adjacent industries.

Nor does Careful Shopper's assertion that TP-Link and Amazzia are "not a single entity" support its position. Opp. 24-26. Determining whether there is concerted action "does not turn simply on whether the parties involved are legally distinct entities. *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010). Court must evaluate "how the parties involved in the alleged anticompetitive conduct actually operate." *Id.* Careful Shopper has not identified any authority for the proposition that a distributor's use of a service provider to protect its brand gives rise to a Section 1 claim. Instead, it asserts that the facts here are "governed by *Am[erican] Needle*" (Opp. 25), which addressed whether independently owned National Football League teams are capable of conspiring for purposes of Section 1. That Court held they could because the "teams compete with one another, not only on

1    the playing field, but to attract fans, for gate receipts, and for contracts with

2    managerial and playing personnel." 560 U.S. at 196-97. To the contrary, there is no

3    allegation that TP-Link seeks to attract customers of brand protection services or that

4    Amazzia targets consumers of TP-Link products.

5          The Section 1 claim fails for this independent reason.

6          **D.   Careful Shopper Cannot Plead a Rule of Reason Claim**

7          Careful Shopper does not argue that it has tried to plead a rule-of-reason claim,

8    but nevertheless defends its market definition. Opp. 27-28.[7] It then goes on to argue,

9    citing a pre-*Twombly* district court case, that it is not required to adequately plead a

10   market.

11         Careful Shopper continues to ignore Ninth Circuit authority that requires a

12   plaintiff to plead "both a geographic market and a product market." *Hicks v. PGA*

13   *Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Amazon's alleged market power

14   (Opp. 27) is irrelevant—Careful Shopper does not accuse Amazon of any antitrust

15   violations— and "Amazon" is not a product market. A product market "must

16   encompass the *product* at issue as well as all economic substitutes for the *product*."

17   *Newcal. Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008)

18   (emphasis added). Economic substitutes have a "reasonable interchangeability of use"

19   or sufficient "cross-elasticity of demand" with the relevant product. *Id.* As relevant

20   here, Careful Shopper argues that in a different action, a plaintiff has alleged that TP-

21   Link's conduct increased the prices on Amazon for a single TP-Link product—the

22   AC5400 router. Opp. 19-20. Even if those allegations apply to this action, any

23   properly defined product market must include economic substitutes of the at-issue

24   router—i.e., every other router in the marketplace that offers similar functionality.

25   Careful Shopper fails to do so.

26   _____

27   [7] A plaintiff must "identify the relevant geographic and product markets" "*[e]xcept*
     when alleging a *per se* antitrust violation." *Big Bear Lodging Ass'n v. Snow Summit,*

28   *Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999) (first emphasis added).

1    Careful Shopper does not attempt to argue the remaining elements of a *rule-of-*

2    *reason* claim because it cannot. There are simply no facts Careful Shopper could

3    plausibly allege that would suggest any injury to competition in the larger interbrand

4    market. The antitrust claim must be dismissed.

5    **VI.   THE COURT SHOULD DENY CAREFUL SHOPPER'S REQUEST**

6    **FOR JUDICIAL NOTICE**

7    Careful Shopper respectfully asks the Court to deny Careful Shopper's request

8    for judicial notice of nine documents, ECF No. 70-3. Careful Shopper seeks to have

9    the Court take judicial notice of an amended complaint in the action, *Careful*

10   *Shopper, LLC v. TP-Link USA Corp., et al*., No. 1:18-cv-03019-RJD-RM (E.D.N.Y.)

11   (Ex. 16), and a declaration submitted in that action (Ex. 12); as well as the second

12   amended complaint filed in an unrelated action, *Thimes Solutions Inc. v. TP Link USA*

13   *Corporation et al*, No. 2:19-CV-10374-PA (C.D. Cal.) (Ex. 22). These are not the

14   proper subjects of judicial notice. *See, e.g., Darbeevision, Inc. v. C&A Mktg., Inc*.,

15   No. SACV 18-00725-AG, 2018 WL 7500284, at *3 (C.D. Cal. Dec. 13, 2018)

16   (declining to take judicial notice of plaintiff's first amended complaint, and exhibits

17   attached thereto, in deciding motion to dismiss defendant's counterclaims because the

18   facts alleged therein were subject to reasonable dispute); *Hicks v. Evans*, No. C 08–

19   1146-SI, 2012 WL 398821, at *3 (N.D. Cal. Feb. 7, 2012) ("[A]llegations in . . .

20   declarations . . . are not the proper subjects of judicial notice even though they are in

21   a court record.").

22   Careful Shopper also requests judicial notice of various screenshots and

23   printouts, including a comment on an Amazon forum and an excerpt from Amazon's

24   website for proof of the existence of alleged Amazon practices or procedures (Exs. 15

25   & 21); a page purportedly from Amazzia's "seller profile" on Amazon (Ex. 18); a

26   blog post from a website called "marketplacerating.com" (Ex. 19); and a LinkedIn

27   page (Ex. 20). These exhibits are also improper subjects of judicial notice. *See, e.g.,*

28   *Ricketts v. Kwan*, No. CV 19-4088-ODW, 2019 WL 4033934, at *2 (C.D. Cal. Aug.

23, 2019) ("Unattributed 'comments' on a non-government website are not subject to judicial notice because they are subject to reasonable dispute." (internal citation omitted)); *Kip's Nut-Free Kitchen, LLC v. Kips Dehydrated Foods, LLC*, No. 3:19-CV-00290-LAB, 2019 WL 3766654, at *3 (S.D. Cal. Aug. 9, 2019) ("[T]he blog post from Plaintiff's website is not properly incorporated by reference into the complaint and cannot be considered by the Court on a motion to dismiss."); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H, 2012 WL 2401972, at *1 (S.D. Cal. June 18, 2012) ("The Court concludes that Plaintiff's LinkedIn page may not be properly subject to judicial notice because Plaintiff's employment status is not generally known within the Court's jurisdiction, and LinkedIn is not a source whose accuracy cannot be reasonably questioned.").

Finally, Careful Shopper seeks to have the Court take judicial notice of a screenshot of a communication between TP-Link Technical Support and a customer produced during discovery (Ex. 14), apparently as proof of Careful Shopper's disputed allegations concerning TP-Link's enforcement of its warranty policy. *See* Opp. 3. This exhibit is not judicially noticeable. *See, e.g., Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, No. CV 11-01539-MMM, 2013 WL 12243947, at *2 (C.D. Cal. Feb. 19, 2013) ("The proposed motion cites . . . email correspondence produced during discovery; the contents of these . . . emails are not alleged in [defendant's] counterclaim. Courts regularly hold that such documents are not proper subjects of judicial notice.").

## CONCLUSION

For the foregoing reasons, TP-Link respectfully requests that the Court grant their motion to strike or, in the alternative, dismiss the ACC without leave. *Century Sur. Co. v. Prince*, 782 F. App'x 553, 557 (9th Cir. 2019) (leave to amend not warranted where claims based on protected communications). TP-Link also requests that the Court deny Careful Shopper's request for judicial notice. TP-Link further requests attorneys' fees and costs pursuant to the anti-SLAPP statute.

1

2    Dated: February 21, 2020                Respectfully submitted,

3                                            LTL ATTORNEYS LLP

4
                                            By: _/s/ Heather F. Auyang_
5                                               Heather F. Auyang
                                                Joe H. Tuffaha
6                                               Prashanth Chennakesavan

7                                               *Attorneys for Plaintiff*
                                                *TP-Link USA Corporation and*
8                                               *Third-Party Defendant TP-Link*
                                                *North America, Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28